UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| OLASAPO OGUNMOKUN and MANZOOR MUMIN, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC. and RAISER, LLC,<br><br>Defendants. | Case No.:<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT** |

TO THE CLERK OF THE ABOVE-ENTITLED COURT, PLAINTIFFS, AND THEIR

ATTORNEY(S) OF RECORD:

PLEASE TAKE NOTICE that Defendants Uber Technologies, Inc. ("Uber") and Rasier,

LLC ("Rasier") (collectively, "Defendants"), hereby remove this action from the Supreme Court

of the State of New York, County of Kings, to the United States District Court for the Eastern

District of New York.  This Notice of Removal ("Notice") is based on 28 U.S.C. sections

1332(a)(1), 1332(d), 1441, 1446, and 1453, and more specifically, the following:

I.      **PROCESS, PLEADINGS, AND ORDERS**

1.      On or about September 9, 2015, Plaintiffs Olasapo Ogunmokun and Manzoor

Mumin ("Plaintiffs") commenced a civil action in the Supreme Court of the State of New York,

County of Kings (the "Complaint"), where the case was assigned Index No. 511072/2015.  A

true and correct copy of the Summons and Complaint, and all attached documents, are attached

hereto as **Exhibit A**.

2.      Plaintiffs served Defendants with a Summons and a copy of the Complaint on

September 25, 2015.  A true and correct copy of the Affidavit of Service filed by Plaintiffs

verifying service on Defendant Uber is attached hereto as **Exhibit B**.  A true and correct copy of

the Affidavit of Service filed by Plaintiffs verifying service on Defendant Rasier, LLC ("Rasier") attached hereto as **Exhibit C**.

3.      The Complaint alleges the following causes of action: (i) tortious interference with contract and business relations; (ii) breach of contract; (iii) unjust enrichment; (iv) conversion; (v) unfair competition; (vi) fraud and misrepresentation; (vii) violations of the New York Labor Law, including: failure to provide prompt payment of wages upon termination and resignation, failure to provide meal and rest periods, unlawful retention of gratuities, failure to maintain required payroll records, and failure to pay minimum wage.

4.      On or around September 22, 2015, Plaintiffs filed an Amended Complaint (the "Amended Complaint").  A true and correct copy of the Amended Complaint, and all attached documents, is attached hereto as **Exhibit D**.

5.      The Amended Complaint alleges the same claims averred in the initial Complaint, but also includes a claim for unpaid overtime under the New York Labor Law.   In their Complaint and Amended Complaint, Plaintiffs allege that "Defendant Raiser [sic] is a subsidiary of Uber and is the equivalent of Uber for the purposes of this action."  (Complaint, ¶ 7; Amended Complaint, ¶ 7.)

6.      On or around October 6, 2015, the parties entered into a Stipulation whereby counsel for Defendants agreed to accept service of process of the Amended Complaint on behalf of Defendants as of October 2, 2015.  A true and correct copy of the parties' fully executed Stipulation is attached hereto as **Exhibit E**.  A true and correct copy of the Affidavit of Service filed by Plaintiffs verifying service of the Amended Complaint on Defendant Uber is attached hereto as **Exhibit F.**  A true and correct copy of the Affidavit of Service filed by Plaintiffs verifying service of the Amended Complaint on Defendant Rasier is attached hereto as **Exhibit**

-2-

**G**.   A true and correct copy of the Affidavit of Mailing verifying mailing of the Amended Complaint to Defendant Rasier is attached hereto as **Exhibit H**.

7.      Pursuant to 28 U.S.C. § 1446(a), the attached exhibits constitute all process, pleadings and orders served upon Defendants or filed or received in this action by Defendant.

**II.    VENUE**

8.      Because the Supreme Court of Kings County, New York, lies in the Eastern District of New York, this Court is the appropriate venue for removal.  *See* 28 U.S.C. §§ 112(b) and 1441(a).

**III.   DIVERSITY JURISDICTION PURSUANT TO 28 U.S.C. § 1332(A)**

9.      Under 28 U.S.C. § 1332(a), federal courts have original jurisdiction over actions in which the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

### A.  Diversity Of Citizenship Exists

10.     For diversity purposes, an individual is a citizen of the state in which he or she is domiciled with the intent to remain.  *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998). "The place where a [man] lives is properly taken to be [his] domicile until facts adduced establish the contrary. *Dist. of Columbia v. Murphy*, 314 U.S. 441, 455 (1941); *see also Willis v. Westin Hotel Co.*, 651 F. Supp. 598, 601 (S.D.N.Y. 1986) ("An individual's residence at the time a lawsuit is commenced provides *prima facie* evidence of [his] domicile.").   Plaintiff Ogunmokun alleges that he is a citizen of New York State and a resident of Kings County. (Amended Complaint, ¶ 4.)  Plaintiff Mumin alleges that he is a citizen of New York State and a resident of Queens County.  (*Id*., ¶ 5.)  Accordingly, Plaintiffs are citizens of New York State for purposes of diversity jurisdiction.

11.     For purposes of diversity jurisdiction, a corporation is deemed to be a citizen of the State in which it was incorporated and the State where it has its principal place of business. 28 U.S.C. § 1332(c)(1).

12.     Defendant Uber is incorporated in the State of Delaware, and its principal place of business is San Francisco, California.   (Declaration of Michael Colman in Support of Defendants' Removal of Civil Action from State Court ["Colman Decl."], ¶ 2.)   Accordingly, Uber is a citizen of Delaware and California, and not New York, for diversity purposes. 28 U.S.C. §§ 1332(a)(1), (c)(1).

13.     Defendant Rasier is a wholly owned subsidiary of Uber.   Rasier is a Delaware limited liability company, and its principal place of business is in San Francisco, California. (Colman Decl. at ¶ 2.)   Accordingly, Rasier is a citizen of Delaware and California, and not New York, for diversity purposes. 28 U.S.C. §§ 1332(a)(1), (c)(1).

**B.  The Amount In Controversy Exceeds $75,000**

14.     Pursuant to 28 U.S.C. 1446(c), the Defendant need only establish by a preponderance of evidence that the amount in controversy exceeds the $75,000 jurisdictional requirement.

15.     Plaintiffs' Amended Complaint does not allege a specific amount in controversy but states that, in addition to interest and costs, Plaintiffs seeks to recover compensatory, punitive, treble, and liquidated damages, as well as back pay.   (Amended Complaint, p. 12 [Prayer For Relief].)

16.     Where removal is based on diversity of citizenship and the initial pleading seeks a money judgment but does not demand a specific sum, "the notice of removal may assert the amount in controversy," and a removing defendant need only establish that it is more likely than

not that the amount in controversy exceeds the jurisdictional minimum of $75,000.  28 U.S.C. § 1446(c)(2)(A).

17.     For jurisdictional purposes, the amount in controversy is "the sum put in controversy by the plaintiff's complaint." *Scherer v. Equitable Life Assurance Soc'y of the United States*, 347 F.3d 394, 399 (2d Cir. 2003).

18.     Although Defendants deny the validity and merit of Plaintiffs' claims and allegations, and deny that Plaintiffs are entitled to any relief, Plaintiffs' claims each establish an amount in controversy in excess of the jurisdictional minimum of $75,000, exclusive of interest and costs.

19.     For example, Plaintiff Ogunmokun alleges that he was "employed … as a driver from November 2012 through July 2015," and that he "incurred between $500 to $650 each week in expenses." (Amended Complaint, ¶¶ 23, 27.)  Accordingly, if Plaintiff Ogunmokun were to recover on his claim for conversion, which seeks "tips and *money spent for expenses*," he could recover at least $97,500.00 for this claim alone.  (*Id.*, ¶ 55) (emphasis supplied.)[1]

20.     Plaintiff Ogunmokun further alleges that he "drove approximately eighty (80) hours each week throughout the course of his employment," and that he received "between $750 to $900 each week" in payment for his services.  (*Id.*, ¶¶ 25, 27.)  Thus, if Plaintiff Ogunmokun were to recover on his claim for unpaid overtime, he could recover at least $36,582.00.[2]

21.     If Plaintiff Ogunmokun were to recover liquidated damages under the New York Labor Law, he could potentially recover at least an additional $36,582.00, representing 100% of the total amount of overtime wages allegedly due.

---

[1] 195 weeks x $500 per week in expenses = $97,500.00.
[2] $750 per week / 80 hours per week = $9.37/hour; $9.37 x 1.5 = $14.06 overtime rate; $14.06 – $9.37 = $4.69 allegedly unpaid overtime premium pay/hour; $4.69 x 40 hours of OT per week x 195 weeks = $36,582.00.

22.     Plaintiff Mumin alleges that he was "employed … as one of [Uber's] drivers from 2011 through 2013," and that he "incurred between $500 to $750 each week in expenses." (*Id*., ¶¶ 29, 32.)  Thus, assuming an average of $575 per week in expenses, if Plaintiff Mumin were to recover on his claim for conversion, he could recover at least $39,962.50 for this claim alone.[3]

23.     Plaintiff Mumin further alleges that he "averaged between forty (40) to seventy (70) hours per week driving for Uber," and that he received "between $700 to $1600 each week" in payment for his services.  (*Id*., ¶ 31.)  Accordingly, assuming an average of approximately 55 hours per week of work, and $1,150 per week in payment, if Plaintiff Mumin were to recover on his claim for unpaid overtime, he could recover at least $24,453.00 for this claim.[4]

24.     If Plaintiff Mumin were to recover liquidated damages under the New York Labor Law, he could potentially recover at least an additional $24,453.00, representing 100% of the total amount of overtime wages allegedly due.

25.     Accordingly, for these three claims alone, the amount in controversy with respect to Plaintiffs' claims is $259,532.50.

26.     Based on the foregoing, Plaintiffs' claims each easily exceed $75,000.  Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. §1332(a) for each of the Plaintiffs' claims in their individual capacity, even without taking into consideration Plaintiffs' claims for gratuities, attorneys' fees, punitive damages, or Plaintiffs' other claims.

## IV.   CAFA JURISDICTION PURSUANT TO 28 U.S.C. § 1332(D)

27.     Removal jurisdiction also exists because this Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).  CAFA

---

[3] 69.5 weeks (amount of alleged service period falling within applicable statute of limitations period) x $575 per week in expenses = $39,962.50.
[4] $1,150 per week / 55 hours per week = $20.90/hour; $20.90 x 1.5 = $31.35 overtime rate; $31.35 - $20.90 = $10.45 alleged unpaid overtime premium pay/hour; $10.45 x 15 hours of OT per week x 156 weeks = $24,453.00.

grants federal district courts original jurisdiction over civil class action lawsuits in which any plaintiff is a citizen of a state different from any defendant, and where the amount in controversy exceeds $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d). CAFA authorizes removal of such actions in accordance with 28 U.S.C. § 1446. As set forth below, this case meets each CAFA requirement for removal, and is timely and properly removed by the filing of this Notice. Specifically, this Court has jurisdiction over this case under CAFA because it is a putative civil class action wherein: (1) the proposed class contains at least 100 members; (2) Defendants are not a state, state official, or other governmental entity; (3) there is diversity between at least one class member and one defendant; and (4) the amount in controversy for all class members exceeds $5,000,000.00.

28. As a preliminary matter, Plaintiffs purport to bring this case as a class action on behalf of themselves and all others similarly situated pursuant to New York Civil Practice Law and Rules § 901 *et seq*. This statute authorizes an action to be brought by one or more representative persons as a class action. As such, this action is properly considered a putative class action under CAFA.

### A. The Proposed Class Contains At Least 100 Members

29. Plaintiffs define the putative class as "all other similarly situated Uber drivers." (Amended Complaint, ¶ 10.) A preliminary investigation has revealed that no fewer than 43,044 individuals, including Plaintiffs, have used Defendants' software application to generate leads in the State of New York between September 9, 2009 (six years prior to the filing of the Complaint) and the present. (Colman Decl., ¶ 4.) Accordingly the putative class contains more than 100 members.

**B. Defendants Are Not Governmental Entities**

30.     Defendant Uber is incorporated in the State of Delaware, and maintains a principal place of business in San Francisco, California.  Defendant Rasier is a Delaware limited liability company, which maintains a principal place of business in San Francisco, California. Neither Defendant is a state, state official or any other governmental entity.  (Colman Decl., ¶ 2.)

**C. Plaintiffs' Citizenship Is Diverse From Defendants' Citizenship**

31.     CAFA's minimal diversity requirement is satisfied, *inter alia*, when "any member of a class of Plaintiffs is a citizen of a State different from any defendant."  28 U.S.C. §§ 1332(d)(2)(A), 1453(b).  As addressed above, Plaintiffs are residents of the State of New York and Defendants are residents of Delaware and California.  Accordingly, diversity of citizenship exits.

**D. Amount In Controversy**

32.     Defendants need only establish that Plaintiffs' claims and the claims of the putative class exceed the jurisdictional minimum.  The Act authorizes the removal of putative class actions in which, among the other factors mentioned above, the aggregate amount in controversy for all class members exceeds five million dollars ($5,000,000.00).  Although Defendants deny the validity and merit of Plaintiffs' claims and allegations, and vigorously deny that (i) Plaintiffs and putative class members are entitled to any relief, and (ii) Plaintiffs are representative of the putative class, the damages claimed clearly exceed the jurisdictional minimum.

33.     For example, assuming that Plaintiff Ogunmokun and Plaintiff Mumin's claims are representative of the putative class (which, as stated above, Defendants dispute), each class member would seek an average of at least $68,731.25 in damages arising from Plaintiffs'

conversion claim,[5] and \$30,517.50 in unpaid overtime compensation[6] (in addition to other damages claimed by Plaintiffs on behalf of themselves and putative class members). In other words, the amount in controversy as to Plaintiffs' conversion claim totals approximately \$2,958,467,925.00 for the class.[7] Similarly, the amount in controversy as to Plaintiffs' unpaid overtime claim totals approximately \$1,313,595,270 for the class.[8]

34.   Accordingly, for these two claims alone, the amount in controversy is \$4,272,063,195.00.[9]

35.   Even if putative class members had only 1% of the potential damages alleged by Plaintiffs for these claims, the amount in controversy would still be in excess of \$5,000,000.

36.   Based on the foregoing, the CAFA amount in controversy requirement is easily satisfied here, even without taking into consideration Plaintiffs' claims for gratuities, attorneys' fees, punitive damages, or Plaintiffs' other claims.

## V.   COMPLIANCE WITH PROCEDURAL REQUIREMENTS

37.   This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b), as it is being filed on October 26, 2015, which is within thirty days of Defendants' receipt of the Complaint.

38.   In accordance with 28 U.S.C. §1446(d), a true and correct copy of the Notice to State Court of Filing of Notice of Removal is attached hereto as **Exhibit I**. This Notice to State Court, along with the Notice to Adverse Party and this Notice of Removal, will be filed in the Supreme Court of the State of New York, County of Kings, where this action was filed and has been pending.

---

[5] \$97,500.00 + \$39,962.50 / 2 = \$68,731.25
[6] \$36,582.00 + \$24,453.00 / 2 = \$30,517.50
[7] 43,044 potential putative class members x \$68,731.25 = \$2,958,467,925.00
[8] 43,044 potential putative class members x \$30,517.50 = \$1,313,595,270
[9] \$2,958,467,925.00 + \$1,313,595,270 = \$4,272,063,195.00

39.     In accordance with 28 U.S.C. § 1446(d), a true and correct copy of the Notice to Adverse Party is attached hereto as **Exhibit J**.  This Notice to Adverse Party, along with the Notice to State Court of Filing of Notice of Removal and this Notice of Removal, will be served upon Plaintiffs in accordance with 28 U.S.C. § 1446 (d).

## VI.     CONCLUSION

**WHEREFORE**, having fulfilled all statutory requirements, Defendants remove this action from the Supreme Court of the State of New York, Kings County, to this Court, and request that this Court assume full jurisdiction over this matter as provided by law.

Respectfully submitted,

Date:   October 26, 2015
        New York, New York

/s/ David M. Wirtz
David M. Wirtz
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY  10022.3298
212.583.9600

Attorneys for Defendants
UBER TECHNOLOGIES, INC.
RASIER, LLC

Firmwide:136582494.1 073208.1093