EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-----------------------------------------------------------------X

OLASAPO OGUNMOKUN and MAZOOR MUMIN,
individually, and on behalf of all others similarly-
situated,

    **Index No.:**

       Plaintiffs,

    **SUMMONS**

   v.

UBER TECHNOLOGIES, INC and RAISER, LLC,

       Defendant.

-----------------------------------------------------------------X

**TO:**   **THE ABOVE NAMED DEFENDANT:**

    **YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve
a copy of your Answer, or, if the Complaint is not served with this Summons, to serve a notice of
appearance, on the plaintiff's attorney within 20 days after service of this Summons, exclusive of
the day of service, where service is made by delivery upon you personally within the state, or
within 30 days after completion of service where service is made in any other manner.  In case of
your failure to appear or answer, judgment will be taken against you by default for the relief
demanded in the Complaint. The basis of the venue is the Defendant's places of business and the
location in which this cause of action arose.

Dated:  New York, New York
         September 9, 2015

                       NAPOLI LAW PLLC
                       1301 Avenue of the Americas, 10th Floor
                       New York, NY 10019
                       (212) 397-1000
                            -and-
                       IMBESI LAW P.C.
                       450 Seventh Avenue, 14th Floor
                       New York, New York 10123
                       (212) 736-0007 (Phone)
                       (212) 658-9177 (Fax)
                       ***Attorneys for Plaintiffs***

**Defendant's Address:**
       Uber Technologies, Inc.
       Raiser, LLC
       1455 Market Street, 4th Floor
       San Francisco, CA 94103

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS
----------------------------------------------------------------X
OLASAPO OGUNMOKUN and MAZOOR MUMIN,
individually, and on behalf of all others similarly-
situated,

                 Plaintiffs,

v.

UBER TECHNOLOGIES, INC and RAISER, LLC,

                 Defendants.
----------------------------------------------------------------X

**Index No.:**

**COMPLAINT AND
DEMAND FOR JURY TRIAL**

      Plaintiffs OLASAPO OGUNMOKUN and MANZOOR MUMIN, by their attorneys

Imbesi Law P.C. and Napoli Law PLLC, bring this action on behalf of themselves and all other

individuals who have worked or are currently working as drivers for Defendants UBER

TECHNOLOGIES INC. ("Uber") and Raiser LLC ("Raiser") a Uber subsidiary (together,

"Defendants" or "Uber") in the State of New York. Plaintiffs seek damages and other appropriate

relief for their claims of violations of common law and New York State Labor Law.

## **INTRODUCTION**

      1.     Plaintiffs, current and former drivers for Uber, bring this action alleging Uber's

violations of common law and New York State Labor Law.

      2.     Plaintiffs allege that Uber has failed and continues to fail to comply with New

York State Labor Law requirements due to its misclassification of drivers as independent

contractors rather than employees.

      3.     Plaintiffs seek damages and other appropriate relief on behalf of themselves and

other similarly situated aggrieved individuals who have worked for or who are currently working

for Defendants.

## PARTIES

4.      Plaintiff OLASAPO OGUNMOKUN is citizen of New York State and resident of Kings County.  Plaintiff previously worked for Uber as a driver.

5.      Plaintiff MANZOOR MUMIN is citizen of New York State and resident of Queens County. Plaintiff previously worked for Uber as a driver.

6.      Defendants Uber, is a foreign corporation headquartered in San Francisco, California. Defendants are authorized to conduct business and do conduct business throughout the State New York.

7.      Defendant Raiser is a subsidiary of Uber and is the equivalent of Uber for the purposes of this action.

8.      At all relevant times, Uber was an "employer" within the meaning of all applicable statutes.

9.      At all relevant times, the work performed by Plaintiffs and similarly situated employees was directly essential to the business operated by Defendants.

## CLASS ALLEGATIONS

10.      Plaintiffs bring this Class action pursuant to CPLR §901, on behalf of themselves and all other similarly situated Uber drivers.

11.      Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint. Excluded from the Class are Defendants and their affiliates, parents, subsidiaries, employees, officers, agents, and directors; government entities or agencies, their affiliates, employees, officers, agents, and directors in their governmental capacities; any judicial

2

officer presiding over this matter and the members of their immediate families and judicial staff; and class counsel.

12.     This action is properly maintainable as a class action.  As provided in CPLR §901(a)(1), the proposed Class "is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable." As provided in CPLR §901(a)(2), "there are questions of law or fact common to the Class which predominate over any questions affecting only individual members."

13.     Among the questions of law and fact that are common to the class include, but are not limited to:

    a.   Whether Defendants have charged customers a gratuity for class members' services;

    b.   Whether Defendants failed to distribute the total proceeds of those gratuities to the class members;

    c.   Whether Defendants has informed customers that gratuity is included in the price of the Uber service and so there is no need to tip the drivers;

    d.   Whether class members have suffered damages based upon Uber's representation to customers that there is no need to tip the drivers;

    e.   Whether Defendants improperly classified class members as independent contractors rather than employees; and

    f.   Whether class members have been required to pay the expenses of their employment, including the cost of a vehicle, repairs, gas and tolls.

14.     As provided in CPLR §901(a)(3), the proposed lead Plaintiffs' representative claims are typical of those of the proposed Class because the proposed lead Plaintiffs damages

are based upon the same legal theories. The proposed representative Plaintiffs' grievances, like the proposed Class grievances, arise out of the same business practices and course of conduct of Defendants.  Further, Plaintiffs' damages arise out of a pattern of nearly identical and repetitive business practices conducted by Defendants.  Finally, the representative Plaintiffs have no special circumstances that would put them in conflict with the other members of the Class.

15.     As provided by CPLR §901(a)(4), the representative Plaintiffs can adequately represent the Class. No conflict of interest exists between the representatives and the Class members or with respect to the claims for relief requested.

16.     The representatives and their chosen attorneys are familiar with the subject matter of the lawsuit and have full knowledge of the allegations contained in this complaint so as to be able to assist in its prosecution. In addition, the representatives' attorneys are competent in the relevant areas of the law and have sufficient experience to vigorously represent the Class. Furthermore, the resources available to Class counsel ensure that the litigation will not be hampered by a lack of financial capacity. Plaintiffs' attorneys have sufficient financial resources and are willing to absorb the costs of this litigation.

17.     As provided by CPLR § 901(a)(5), a class action is superior to any other available method for adjudicating this controversy. This proposed class action is the surest way to fairly and expeditiously compensate so large a number of injured persons; to keep the courts from becoming paralyzed by hundreds, perhaps thousands of repetitive cases, and to reduce transaction costs so that the injured Class can obtain the most compensation possible.  Class treatment of this controversy presents a superior mechanism for fairly resolving similar issues and claims without repetitious and wasteful litigation.

## NATURE OF THE ACTION

18.     Plaintiffs bring this action, on behalf of themselves and all other similarly situated persons, to recover damages from Uber's violations of common law and various New York Labor Laws including, without limitation, Uber's (i) failure to pay reasonable expenses incurred by Plaintiffs including but not limited to mileage accrued on personal vehicles and gas.; (ii) unlawful withholding of  gratuities intended for drivers but retained by Uber in violation of New York Labor Law§ 196-d; (iii) unpaid minimum wages in violation of New York Labor Law §220; (iv) tortious interference of contract; (v) breach of contract; and (vi) unjust enrichment.

## JURISDICTION AND VENUE

19.     This Court has personal jurisdiction over Defendants pursuant to CPLR § 301 because Defendants is a foreign business corporation that is authorized to conduct business in the State of New York and does conduct substantial business in the State of New York.

20.     Venue is proper in this case pursuant to CPLR § 503(a) because Plaintiff OLASAPO OGUNMOKUN resides in Kings County.

## STATEMENT OF FACTS

21.     Uber employed Plaintiff OLASAPO OGUNMOKUN as a driver for from November 2012 through July of 2015.

22.     During that period, Plaintiff OGUNMOKUN worked for Uber as one of its Sport Utility Vehicle ("SUV") drivers.

23.     On average, Plaintiff OGUNMOKUN drove eighty (80) hours each week throughout the course of his employment relationship with Uber.

24.     Uber compensated Plaintiff OGUNMOKUN weekly. Initially, when Plaintiff OGUNMOKUN first began driving for Uber, he received 75% of the total fare, and Uber received the remainder 25% of the total fare. In or around August of 2014, Uber unilaterally changed the terms of Plaintiff OGUNMOKUN's employment with Uber and took 28% of the total fare.  After this unilateral change, Plaintiff OGUNMOKUN received only 72% of the total fare.

25.     Uber compensated Plaintiff OGUNMOKUN between $750 to $900 each week. Plaintiff OGUNMOKUN incurred between $500 to $650 each week in expenses, including gas, tolls, lease payments, and car repairs.

26.     Over the course of his employment, Uber did not compensate Plaintiff OGUNMOKUN for any employment related expenses incurred, including gas, tolls, and mileage.

27.     Uber employed Plaintiff MAZOOR MUMIN as one of its drivers from 2011 through 2013.

28.     During that referenced time period, Plaintiff MUMIN worked for Uber as an "Uber Black" driver.

29.     During the course of his employment, Plaintiff MUMIN averaged between forty (40) to seventy (70) hours per week driving for Uber.

30.     Uber compensated Plaintiff MUMIN between $700 to $1600 each week.  Plaintiff MUMIN incurred between $500 to $750 each week in expenses, including gas, tolls, lease payments and car repairs.

31.     Over the course of his employment. Plaintiff MAZOOR MUMIN was not compensated for any employment related expenses incurred including gas, tolls and mileage.

6

32.     Regarding Plaintiffs' gratuity, Uber specifically advertises to its customers that tips are included in the cost of the fare:

## DO I NEED TO TIP MY DRIVER?

You don't need cash when you ride with Uber. Once you arrive at your destination, your fare is automatically charged to your credit card on file – there's no need to tip.

33.     Despite Uber's representation, that gratuity is included in the cost of the fare, Uber drivers are not compensated for gratuities and Uber specifically instructed its drivers to refuse a cash gratuity if offered.

**A.      Misclassification of Drivers**

34.     Plaintiffs allege that Uber uniformly misclassifies all of its drivers as independent contractors when they are employees.

35.     Uber exerts significant control over its drivers. For example, upon signing a license agreement to work for Uber, all new drivers of Uber must watch a video demonstrating how Uber wants its drivers to interact with customers.

36.     In addition, all drivers for Uber must maintain an average customer star evaluation of at least 4.5 out of a possible 5 stars. Instructions on how to improve one's star rating are given to drivers who fall below this average in any given week. If a driver fails to maintain an average customer rating of 4.5, Uber will deactivate his or her ability to use the application to pick up customers, an action tantamount to terminating the driver "at will," a hallmark of an employee-employer relationship.

37.     As a result of its misclassification, Uber failed to provide Plaintiffs and other similarly aggrieved employees with itemized wage statements, minimum wages, lawful meal,

rest periods, and reimbursement for necessary expenses. Uber also failed to keep accurate payroll records showing aggrieved employees' hours worked and wages paid.

38.     Uber also retained all gratuities owed to aggrieved employees despite representing to its customers and advertising that gratuity is included in the total cost of the car service.

**B.     <u>Violations of New York Labor Law</u>**

39.     Plaintiffs further allege that Uber violated New York State Labor Law in its (i) failure to provide prompt payment of wages to drivers upon termination and resignation in violation of Labor Law § 191; (ii) failure to provide meal and rest periods in violation Labor Law § 162; (iii) retention of gratuities intended for driver employees in violation of Labor Law§ 196-d; (iv) failure to keep required payroll records in violation of Labor Law § 220; and (v) its failure to pay minimum wages in violation of Labor Law §220.

**COUNT I**
**<u>TORTIOUS INTERFERENCE WITH CONTRACT & BUSINESS RELATIONS</u>**

40.     Plaintiffs, on behalf of themselves and the proposed class, repeat and realleg all preceding paragraphs as if fully set forth herein.

41.     Defendants' website sets forth:

## DO I NEED TO TIP MY DRIVER?

You don't need cash when you ride with Uber. Once you arrive at your destination, your fare is automatically charged to your credit card on file — there's no need to tip.

42.     Defendants' conduct, in failing to remit the total proceeds of gratuities to drivers constitutes unlawful tortious interference with the contractual and/or advantageous relationship that exists between the drivers and customers, under state common law.

8

43.    Defendants' conduct, informing customers "there is no need to tip," constitutes unlawful tortious interference with the contractual and/or advantageous relationship that exists between the drivers and customers, under New York State common law.

44.    Defendants had a contract with Plaintiffs, were aware of those contracts, intentionally procured the breach of those contracts, and caused Plaintiffs damages thereby.

## COUNT II
## BREACH OF CONTRACT

45.    Plaintiffs, on behalf of themselves and the proposed class, repeat and reallege all preceding paragraphs as if fully set forth herein.

46.    Defendants' conduct constitutes a breach of contract under state common law. Defendants have a contract with the drivers to remit to them the total proceeds of all gratuities.

47.    At all times, Uber withheld and continues to withhold gratuities given by customers to Uber drivers and/or gratuities that are incorporated into the set fare.

48.    Uber's withholding of these gratuities constitutes a breach of contract.

## COUNT III
## UNJUST ENRICHMENT

49.    Plaintiffs, on behalf of themselves and the proposed class, repeat and reallege all preceding paragraphs as if fully set forth herein.

50.    Defendants unlawfully retained gratuities owed to the drivers.

51.    As a result, Defendants has been unjustly enriched through their retention of a portion of the gratuities owed to the drivers.

52.    Plaintiffs and the class members are entitled to restitution for their full share of the proceeds of the improperly retained gratuities.

9

## COUNT IV
## <u>CONVERSION</u>

53.     Defendants unlawfully took Plaintiffs' property, namely tips and money spent for

expenses, without Plaintiffs' permission.

54.     As a result, Plaintiffs were harmed and class members are entitled to restitution

for their full share of proceeds, as well as treble damages.

## COUNT V
## <u>UNFAIR COMPETITION</u>

55.     Defendants's activities have caused confusion with, or have been mistaken for,

Plaintiffs' activities in the mind of the public, or are likely to cause such confusion or mistake; or

Defendants has acted unfairly in  New York some manner.

56.     Plaintiffs' property rights, specifically gratuities and expenses, were

misappropriated by Defendants for their commercial advantage.

57.     Defendants unjustly profited by Plaintiffs' expenditure of time, labor and talent.

## COUNT VI
## <u>FRAUD AND MISREPRESENTATION</u>

58.     Defendants made a material representation of fact, that Plaintiffs would receive

gratuities, which was untrue, which Defendants knew was an untrue statement at the time, with

the intent to deceive, which Plaintiffs justifiably relied upon, causing Plaintiffs to incur damages.

## COUNT VII
## <u>VIOLATIONS OF NEW YORK STATE LABOR LAW</u>

59.     Plaintiffs, on behalf of themselves and the proposed class, repeat and reallege all

preceding paragraphs as if fully set forth herein.

60.     Despite the existence of an agreement indicating Plaintiff is an independent contractor, the treatment of Plaintiff and control exercised by Uber indicate that Plaintiff is an employee.

61.     Plaintiffs seeks damages pursuant to New York State Labor Law for violations of the following sections

     a.   failure to provide prompt payment of wages to driver employees upon termination and resignation in violation of Labor Law § 191;

     b.   failure to provide meal and rest periods in violation Labor Law § 162;

     c.   retaining portions of gratuities intended for driver employees in violation of Labor Law§ 196-d;

     d.   failure to keep required payroll records in violation of Labor Law § 220;

     e.   failure to pay minimum wages in violation of Labor Law §220.

62.     As a result of Uber's violations, Plaintiffs are entitled to recover associated with the wages and benefits withheld in violation of New York State Labor Law as well as attorney fees pursuant to New York State Labor Law § 198. In addition, Plaintiffs seek the imposition of penalties on the Defendants Uber with respect to the applicable provisions of New York State Labor Law § 197 and § 215.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff individually and on behalf of the proposed class, requests relief against the Defendants as follows:

     a.   An award of damages, including compensatory,  punitive, and treble damages,  in an amount to be determined at trial;

     b.   Notice to the Classes of the action;

11

c.  An injunction against Defendants prohibiting Defendants from engaging in each of the unlawful practices, policies and patterns set forth herein;

d.  Liquidated damages, pursuant to the NYLL;

e.  Reasonable attorneys' fees and costs of this action;

f.  Pre-judgment and post-judgment interest as provided by law; and

g.  An Order requiring that Defendants return to Plaintiffs any gratuities and any other funds wrongfully kept by Defendants; and

h.  Such other and further relief that the Court may deem just and proper.

## JURY DEMAND

Plaintiff, on behalf of himself and the proposed class, demands a trial by jury on all claims so triable.

Dated: New York, New York
       September 9, 2015

Respectfully submitted,

NAPOLI LAW PLLC

MARIE NAPOLI
1301 Avenue of the Americas, 10th Floor
New York, NY 10019
(212) 397-1000 (Phone)

IMBESI LAW P.C.

Jeanne Lahiff
Murray Friedman
Brittany Weiner
450 Seventh Avenue, Suite 1408
New York, New York 10123
(212) 736-0007 (Phone)
(212) 658-9177 (Fax)
*Attorneys for Plaintiff*

12