UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MANZOOR MUMIN and VICTOR MALLH, individually and on behalf of all others similarly situated, <br><br>          Plaintiffs, <br><br>      -against- <br><br> UBER TECHNOLOGIES, INC. and RASIER, LLC, <br><br>          Defendants. | Case No: 1:15-cv-06143 (NGG) (VMS) |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION, DISMISS PLAINTIFF MALLH'S CLAIMS, AND STRIKE PLAINTIFF'S CLASS ALLEGATIONS

---

By:    David M. Wirtz
Andrew M. Spurchise
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, New York 10022
Tel: 212.583.9600

*Attorneys for Defendants*
Uber Technologies, Inc. and Rasier, LLC

Served: April 11, 2016

TABLE OF CONTENTS

PAGE

I.    PRELIMINARY STATEMENT ................................................................. 1

II.   RELEVANT FACTS ............................................................................... 1

      A.    The Uber app connects independent transportation providers with riders ........... 1

      B.    Plaintiff agreed to arbitrate claims arising out of, or relating to, his
            agreement with Defendants.......................................................................... 2

      C.    Plaintiff filed a lawsuit asserting claims arising out of, or related to, the
            December 2015 Agreement ....................................................................... 8

III.  THE COURT SHOULD ORDER PLAINTIFF MALLH TO ARBITRATE HIS
      CLAIMS ON AN INDIVIDUAL BASIS AND DISMISS HIS CLAIMS
      PURSUANT TO FAA §§ 3 AND 4 ........................................................ 8

      A.    The Federal Arbitration Act applies to the Arbitration Provision ...................... 8

      B.    The Arbitration Provision is valid and must be enforced under the FAA ........... 10

            1.    The Arbitration Provision delegates the gateway issues to the
                  arbitrator ....................................................................................... 11

            2.    The gateway issues under the FAA have been satisfied ......................... 12

                  a.    A valid agreement to arbitrate exists................................... 13

                  b.    Plaintiff's claims fall within the scope of the Agreement............ 13

      C.    Plaintiff's class claims cannot proceed ................................................... 14

IV.   CONCLUSION.................................................................................... 17

TABLE OF AUTHORITIES

PAGE

CASES

AT&T Mobility, LLC v. Concepcion,
   131 S. Ct. 1740 (2011) ..................................................................8, 9, 15, 16

Baravati v. Josephthal, Lyon & Ross, Inc.,
   28 F.3d 704 (7th Cir. 1994) ...............................................................15

Brown v. St. Paul Travelers Cos.,
   559 F. Supp. 2d 288 (W.D.N.Y. 2008 ) ....................................................13

Buckeye Check Cashing, Inc. v. Cardegna,
   546 U.S. 440 (2006) .......................................................................9, 11

Citizens Bank v. Alafabco, Inc.,
   539 U.S. 52 (2003) ...........................................................................10

Direct TV, Inc. v. Imburgia,
   __ U.S. __, 136 S. Ct. 463 (2015) ..........................................................9

First Options of Chicago v. Kaplan,
   514 U.S. 938 (1995) .........................................................................13

Gilmer v. Interstate/Johnson Lane Corp.,
   500 U.S. 20 (1991) ...........................................................................9

Hall St. Assoc., LLC v. Mattel, Inc.,
   552 U.S. 576 (2008) ..........................................................................9

Howsam v. Dean Witter Reynolds, Inc.,
   537 U.S. 79 (2002) ..........................................................................11

Johnmohammadi v. Bloomingdale's, Inc.,
   755 F.3d 1072 (9th Cir. 2014) ..............................................................13

Mastrobuono v. Shearson Lehman Hutton, Inc.,
   514 U.S. 52 (1995) ........................................................................9, 14

Michalski v. Circuit City Stores, Inc.,
   177 F.3d 634 (7th Cir. 1999) ...............................................................13

Mohamed v. Uber Technologies, Inc.,
   No. C-14-5200, 2015 U.S. Dist. LEXIS 75288 (N.D. Cal. June 9, 2015) ................10

TABLE OF AUTHORITIES
(CONTINUED)

PAGE

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983) ..........................................................................................9, 13

*Neal v. Asta Funding, Inc.,*
    No. 13-3438, 2013 U.S. Dist. LEXIS 170801 ......................................................11

*O'Connor v. Uber Technologies, Inc.,*
    2015 U.S. Dist. LEXIS 165182 (N.D. Cal. 2015) ................................................10

*O'Connor v. Uber Techs., Inc.,*
    58 F. Supp. 3d 989, 1006 (N.D. Cal. 2014) ........................................................10

*PacifiCare Health Sys., Inc. v. Book,*
    538 U.S. 401 (2003) ............................................................................................11

*Paduano v. Express Scripts, Inc.,*
    55 F. Supp. 3d 400, 423 (E.D.N.Y. 2014) ..........................................................11

*Perry v. Thomas,*
    482 U.S. 483 (1987) ..............................................................................................9

*Rent-A-Center, W., Inc. v. Jackson,*
    561 U.S. 63 (2010) ........................................................................................11, 14

*Ryan v. JP Morgan Chase & Co.,*
    2013 U.S. Dist. LEXIS 24628 (S.D.N.Y. Feb. 21, 2013) ....................................17

*Sena v. Uber Technologies, Inc.,*
    Case No. 2:15-cv-02418-DLR ............................................................................12

*Southland Corp. v. Keating,*
    465 U.S. 1 (1984) ................................................................................................14

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,*
    559 U.S. 662 (2010) ............................................................................................15

*Sutherland v. Ernst & Young LLP,*
    726 F.3d 290 (2d Cir. 2013) ................................................................................17

*Torres v. United Healthcare Servs.,*
    920 F. Supp. 2d 368 (E.D.N.Y. 2013) ................................................................17

*Union Fire. Ins. Co. v. Belco Petroleum Corp.,*
    88 F.3d 129 (2d Cir. 1996) ..................................................................................11

TABLE OF AUTHORITIES
(CONTINUED)

PAGE

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574 (1960)................................................................................................13

*Volt Info. Sciences. v. Bd. of Trustees*,
    489 U.S. 468 (1989)........................................................................................14, 15

**STATUTES**

9 U.S.C. section 2 ..........................................................................................................9

9 U.S.C. section 4 ..................................................................................................10, 14

## I.   PRELIMINARY STATEMENT

Plaintiff Victor Mallh ("Plaintiff") voluntarily entered into a valid and enforceable arbitration agreement that requires him to arbitrate, *inter alia*, disputes arising out of or related to his relationship with Defendants Uber Technologies, Inc. ("Uber") and Rasier, LLC ("Rasier"), and to do so only on an individual basis.

In contravention of this agreement, Plaintiff joined in Plaintiff Manzoor Mumin's Third Amended Class Action Complaint against Defendants, alleging various wage and hour claims under the New York Labor Law ("NYLL"), and contract, quasi-contract and tort claims under New York State common law.   Plaintiff seeks relief on behalf of himself and all other independent transportation providers who performed services on the Uber platform in New York State between 2011 and the present.

Plaintiff cannot litigate his claims in this Court, and he cannot pursue classwide relief in any forum.  As discussed, Plaintiff is bound by a broad arbitration agreement that requires him to arbitrate any claims arising out of or related to his relationship with Defendants on an individual basis.  Defendants bring this motion to compel Plaintiff's compliance with that agreement.

For the reasons set forth below, the Court should order Plaintiff to submit his claims to individual arbitration, if he elects to pursue them, dismiss his claims, pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3, 4, and strike Plaintiff's class allegations.

## II.   RELEVANT FACTS

### A.   The Uber app connects independent transportation providers with riders

Uber is a San Francisco-based company that offers a smartphone application ("app") that connects riders to independent transportation providers ("drivers").  (Declaration of Michael Colman in Support of Defendant's Motion to Compel Individual Arbitration and Dismiss Plaintiff Mallh's Claims ["Colman Decl."], ¶ 3.)  Uber offers the app as a tool to both riders and

1

drivers to facilitate transportation services, and it charges a service fee to drivers for use of the app. (*Id.*)  The app is used by riders and drivers in over 150 cities across the United States. (*Id.*, ¶ 5.)

Uber developed and licenses multiple software products, including (1) uberX, (2) UberBLACK, and (3) UberSUV. (Colman Decl., ¶ 4.)  Uber USA, LLC is a wholly-owned subsidiary of Uber engaged in the business of providing lead generation services to drivers through the UberBLACK platform, including in New York. (*Id.*)  Any driver who wishes to access the UberBLACK platform to generate leads for potential riders must first enter into an agreement with Uber USA, LLC ("Uber USA"). (*Id.*, ¶ 7.)  In New York City, pursuant to rules and regulations promulgated by the Taxi and Limousine Commission ("TLC"), drivers must also present to Uber proof of a commercial vehicle license issued by the TLC, commercial grade insurance, and a vehicle inspected and approved by the TLC.[1] (*Id.*, ¶ 7.)

**B.    Plaintiff agreed to arbitrate claims arising out of, or relating to, his agreement with Defendants**

Plaintiff signed up to use the app to generate leads for potential riders using the UberBLACK platform on April 20, 2015.[2] (Colman Decl., ¶ 11.)  Plaintiff could not access the platform to generate leads for potential riders unless and until he electronically accepted the agreement with Uber USA to use the app, which at that time was the April 3, 2015 Transportation Company Agreement (the "April 2015 Agreement"). (*Id.*)

To accept the April 2015 Agreement, Plaintiff first had to sign into the app, where the Agreement was available for review by clicking a hyperlink presented on the screen. (Colman Decl., ¶¶ 8, 11.)  Plaintiff was free to spend as much time as he wished reviewing the Agreement

---

[1] Available at: http://www.nyc.gov/html/tlc/html/rules/rules.shtml

[2] Uber is not aware of any relationship at any time between Rasier and Plaintiff.  Rasier does not conduct business in New York. (Colman Decl., ¶ 4.)

2

on his smartphone. (*Id.*)   However, to advance past the screen with the hyperlink to the Agreement and actively use the app, Plaintiff had to click "YES, I AGREE" to the Agreement presented. (*Id.*; *see also id.* at Exh. A.)  After clicking "YES, I AGREE," Plaintiff was prompted to confirm his acceptance a second time. (*Id.*, ¶ 8; *see also id.* at Exh. B.)  After accepting the Agreement twice, it was automatically transmitted to Plaintiff's Driver Portal, where he could review it at his leisure, either online on any device or by printing a copy. (*Id.*, ¶ 8.)  On June 9, 2015, Plaintiff accepted the April 2015 Agreement, and his account was activated. (*Id.*, ¶ 11; Exh. G.)

Uber periodically revises its agreements, and drivers who have previously entered into an agreement with Uber or its subsidiaries may be required to assent to revised versions of the contract in order to receive continued access to the app. (Colman Decl., ¶ 9.)  When a revised agreement is rolled out, the process described above is repeated. (*Id.*)

On December 14, 2015, Plaintiff was presented with and accepted a revised agreement through the app, the December 11, 2015 Technology Services Agreement (the "December 2015 Agreement"). (Colman Decl., ¶ 12, *see also id.* at Exh. G.)  As with the April 2015 Agreement, Plaintiff needed to accept the December 2015 Agreement electronically in order to continue to generate leads for potential riders using the UberBLACK platform.[3] (*Id.*)

The December 2015 Agreement contains an arbitration agreement (the "Arbitration Provision"), which broadly requires drivers, *if they do not opt out*, to individually arbitrate *all*

---

[3] Drivers using the UberBLACK platform can hire other individuals to drive vehicles and transport riders on their behalf under their Uber account. (Colman Decl., ¶ 13.)  Accordingly, all drivers must also accept a "Driver Addendum," which incorporates by reference the operative arbitration provision. (*Id.*, *see also id.* at Exh. E.)  Plaintiff accepted the December 2015 Driver Addendum on the same day he accepted the December 2015 Agreement. (*Id.*, ¶ 13.)

disputes arising out of or related to the agreement or their relationship with Uber.[4] (*Id.*, Exh. D.)

The Arbitration Provision provides, in relevant part, as follows:

> This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA") and evidences a transaction involving interstate commerce. This Arbitration Provision applies to any dispute arising out of or related to this Agreement or termination of the Agreement and survives after the Agreement terminates...
>
> **Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before any forum other than arbitration, with the exception of proceedings that must be exhausted under applicable law before pursuing a claim in a court of law or in any forum other than arbitration.   Except as it otherwise provides, this Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial, or by way of class, collective, or representative (non-PAGA) action.**
>
> Except as provided in Section 15.3(v), below, regarding the Class Action Waiver, such disputes include without limitation disputes arising out of or relating to interpretation of application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision....

---

[4] The April 2015 Agreement Plaintiff accepted also included a similar Arbitration Provision. (Colman Decl., Exh. C.) Though the Arbitration Provision in the December 2015 Agreement is operative and enforceable as to Plaintiff, Defendants anticipate Plaintiffs may argue that Uber is enjoined from enforcing it. On December 23, 2015, Judge Edward M. Chen of the Northern District of California issued an injunction providing that, with respect to any putative class member in certain class action lawsuits pending before him, Uber could not enforce the Arbitration Provision in the December 2015 Agreement.   One of these lawsuits seeks to represent a class of drivers nationwide based on Uber's alleged violations of the Fair Credit Report Act's background check disclosure requirements.

Uber strongly disagrees with the order and has appealed it. Regardless, Judge Chen's order does *not* apply to Plaintiff or any other driver in New York City.   Given the rigorous standards imposed by the TLC to obtain a for-hire vehicle license, neither Uber nor its agents procures consumer reports for drivers using the app in New York City. (*Id.*, ¶ 17.) Accordingly, Judge Chen's ruling enjoining enforcement does not extend to Plaintiff, and the Arbitration Provision may be enforced.   Regardless, if the order did apply, Plaintiff would nevertheless be bound to arbitrate his claims pursuant to the arbitration provision in the April 2015 Agreement, which is enforceable for the same reasons described herein.

4

> Except as it otherwise provides, this Arbitration Provision also applies, without limitation, to all disputes between You and Uber[ ][5] ... including but not limited to any disputes arising out of or related to this Agreement and disputes arising out of or related to Your relationship with Uber, including termination of the relationship. This Arbitration Provision also applies, without limitation, to disputes regarding any city, county, state of federal wage-hour law, trade secrets, unfair competition, compensation, breaks and rest periods, expense reimbursement, termination, harassment and claims arising under the ... Fair Labor Standards Act ... and state statutes, if any, addressing the same or similar subject matters, and all other similar federal and state statutory and common law claims.

(*Id.*, Exh. D at § 15.3(i); bold in the original.)

The Arbitration Provision further provides that Plaintiff must pursue any claims in arbitration "**on an individual basis only, and not on a class . . . basis.**" The Arbitration Provision continues, "**[t]he Arbitrator shall have no authority to consider or resolve any claim or issue any relief on any basis other than an individual basis.**" (*Id.*, § 15.3(v).)

Plaintiff voluntarily entered in the December 2015 Agreement. While thousands of drivers have opted out of one or more of the arbitration provisions contained in the various agreements in place between Uber and its subsidiaries, and the drivers who use the app, Plaintiff did not. (Colman Decl., ¶ 14.) Plaintiff was given thirty days to opt out of the Arbitration Provision, which could be accomplished in multiple ways, including by simply sending an email to optout@uber.com. Plaintiff was also notified of his right to consult with an attorney regarding the Provision:

> **Your Right To Opt Out Of Arbitration.**
>
> **Arbitration is not a mandatory condition of your contractual relationship with Uber. If you do not want to be subject to this Arbitration Provision, You may opt out of this Arbitration Provision by notifying Uber in writing of Your desire to opt out of this Arbitration Provision....**

---

[5] The Arbitration Provision expressly applies to any disputes between Plaintiff and any of Uber's subsidiary or affiliate entities, including Rasier.

> **Should You not opt out of this Arbitration Provision within the 30-day period, You and Uber shall be bound by the terms of this Arbitration Provision. You have the right to consult with counsel of Your choice concerning this Arbitration Provision.[6] You understand that You will not be subject to retaliation if You exercise Your right to assert claims or opt-out of coverage under this Arbitration Provision.**

(*Id.*, Exh. D at § 15.3(viii); bold in the original.)

The December 2015 Agreement also contains extensive cautionary notices, both at the beginning of the agreement and before the Arbitration Provision, that advised Plaintiff of the ramifications of agreeing to arbitration and of choosing not to opt out, as well as of certain pending litigation against Uber. The following notice appears on the first page of the December 2015 Agreement:

> **IMPORTANT: PLEASE NOTE THAT TO USE THE UBER SERVICES AND THE ASSOCIATED SOFTWARE, YOU MUST AGREE TO THE TERMS AND CONDITIONS SET FORTH BELOW. PLEASE REVIEW THE ARBITRATION PROVISION SET FORTH BELOW IN SECTION 15.3 CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH UBER ON AN INDIVIDUAL BASIS ... THROUGH FINAL AND BINDING ARBITRATION UNLESS YOU CHOOSE TO OPT OUT OF THE ARBITRATION PROVISION. BY VIRTUE OF YOUR ELECTRONIC EXECUTION OF THIS AGREEMENT, YOU WILL BE ACKNOWLEDING THAT YOU HAVE READ AND UNDERSTOOD ALL OF THE TERMS OF THIS AGREEMENT (INCLUSING SECTION 15.3) AND HAVE TAKEN TIME TO CONSIDER THE CONSEQUENCES OF THIS IMPORTANT BUSINESS DECISION. IF YOU DO NOT WISH TO BE SUBJECT TO ARBITRATION, YOU MAY OPT OUT OF THE ARBITRATION PROVISION BY FOLLOWING THE INSTRUCTIONS PROVIDED IN SECTION 15.3 BELOW.**

(*Id.*, Exh. D; bold in the original.)

In addition, the following language appears immediately prior to the Arbitration Provision in the December 2015 Agreement:

---

[6] The Arbitration Provision goes so far as to provide the contact information for the attorney currently representing drivers in a California class action lawsuit against Uber.

IMPORTANT: This Arbitration Provision will require you to resolve any claim that you may have against Uber on an individual basis, except as provided below, pursuant to the terms of the Agreement unless you choose to opt out of the Arbitration Provision.  Except as provided below, this provision will preclude you from bringing any class, collective, or representative action (other than actions under the Private Attorneys General Act of 2004 ("PAGA"), California Labor Code § 2698 *et seq.* ("PAGA")) against Uber, and also precludes you from participating in or recovering relief under any current or future class, collective, or representative (non-PAGA) action brought against Uber by someone else.

*Cases have been filed against Uber and may be filed in the future involving claims by users of Uber Services and Software, including by drivers. You should assume that there are now, and may be in the future, lawsuits against Uber alleging class, collective, and/or representative (non-PAGA) claims on your behalf, including but not limited to claims for tips, reimbursement of expenses, and employment status. Such claims, if successful, could result in some monetary recovery to you. (THESE CASES NOW INCLUDE, FOR EXAMPLE … O'CONNOR V. UBER TECHNOLOGIES, INC., ET AL., CASE NO. CV 13-03826-EMC (NORTHERN DISTRICT OF CALIFORNIA).*

**The mere existence of such class, collective, and/or representative lawsuits, however, does not mean that such lawsuits will ultimately succeed. But if you do agree to arbitration with Uber, you are agreeing in advance, except as otherwise provided, that you will not participate in and, therefore, will not seek to recover monetary or other relief under any such class, collective, and/or representative (non-PAGA) lawsuit....**

**WHETHER TO AGREE TO ARBITRATION IS AN IMPORTANT BUSINESS DECISION.  IT IS YOUR DECISION TO MAKE.... YOU SHOULD TAKE REASONABLE STEPS TO CONDUCT FURTHER RESEARCH AND TO CONSULT WITH OTHERS – INCLUDING BUT NOT LIMITED TO AN ATTORNEY – REGARDING THE CONSEQUENCES OF YOUR DECISION, JUST AS YOU WOULD WHEN MAKING ANY OTHER IMPORTANT BUSINESS OR LIFE DECISION.**

(*Id.*, Exh. D at § 15.3; bold and italics in the original.)

Plaintiff accepted the December 2015 Agreement on December 14, 2015, and did not opt

out of the Arbitration Provision despite having the unfettered right to do so.[7]  (*Id.*, ¶ 14.)

Accordingly, he is contractually bound to individually arbitrate his claims against Defendants.

### C.   Plaintiff filed a lawsuit asserting claims arising out of, or related to, the December 2015 Agreement

Ignoring his agreement to the Arbitration Provision, Plaintiff has now joined in the Third

Amended Class Action Complaint filed in this matter.  (Dkt. #22.)  The Complaint alleges the

following causes of action: (i) violations of the NYLL, including wrongful retention of gratuities,

failure to maintain payroll records, and failure to remit minimum wages, (ii) tortious interference

with business relations, (iii) breach of contract, (iv) unjust enrichment, (v) conversion, (vi) fraud

and/or intentional misrepresentation, and (vii) promissory estoppel.  (*Id.*)

## III.   THE COURT SHOULD ORDER PLAINTIFF MALLH TO ARBITRATE HIS CLAIMS ON AN INDIVIDUAL BASIS AND DISMISS HIS CLAIMS PURSUANT TO FAA §§ 3 AND 4

The Court should order Plaintiff Mallh to arbitrate his claims against Defendants on an

individual basis, and dismiss his claims pursuant to the FAA, 9 U.S.C. §§ 3, 4, as Plaintiff

entered into a valid and enforceable arbitration agreement, expressly waiving his right to pursue

such claims in court and on a classwide basis.

### A.   The Federal Arbitration Act applies to the Arbitration Provision

As affirmed by the United States Supreme Court in *AT&T Mobility, LLC v. Concepcion*,

131 S. Ct. 1740, 1745 (2011) ("*Concepcion*"), the FAA declares a liberal policy favoring the

enforcement of arbitration policies, stating: "A written provision in any maritime transaction or a

contract evidencing a transaction involving commerce to settle by arbitration a controversy

thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and

---

[7] Plaintiff also had the opportunity to, but did not, opt out of the Arbitration Provision in the April 2015 Agreement.  (*Id.*, ¶ 14.)

enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  In enacting the FAA, Congress sought to overcome widespread judicial hostility to the enforcement of arbitration agreements.  *See Hall St. Assoc., LLC v. Mattel, Inc.*, 552 U.S. 576, 581 (2008); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) (explaining that the FAA was enacted "[t]o overcome judicial resistance to arbitration").

The FAA permits private parties to "trade[] the procedures … of the courtroom for the simplicity, informality, and expedition of arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). It is designed "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).   To this end, the FAA not only places arbitration agreements on equal footing with other contracts, but amounts to a "congressional declaration of a liberal federal policy *favoring* arbitration agreements." *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (quoting *Moses H. Cone*, 460 U.S. at 24) (emphasis added); *Concepcion*, 131 S. Ct. at 1745 ("The overarching purpose of the FAA … is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings"); *Direct TV, Inc. v. Imburgia*, __ U.S. __, 136 S. Ct. 463, 468 (2015) ("The Federal Arbitration Act is a law of the United States, and *Concepcion* is an authoritative interpretation of that Act").

The Arbitration Provision at issue here is indisputably governed by the FAA.  First, the Arbitration Provision so states, which is sufficient to bring it within the purview of the FAA.  *See Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 63-64 (1995) (FAA applies even where contract also provides that state law governs).

Second, the agreements within which each Arbitration Provision is contained affect

9

commerce.  The FAA's term "involving commerce" is interpreted broadly.  *See, e.g., Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (finding the requisite commerce for FAA coverage even when the individual transaction did not have a substantial effect on commerce).  Plaintiff's use of the app to transport riders in exchange for a fare involved commerce sufficient for the FAA to apply.

### B.    The Arbitration Provision is valid and must be enforced under the FAA[8]

The FAA requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of either party to the agreement, consistent with the principle that arbitration is a matter of contract. 9 U.S.C. § 4.  In determining whether to compel arbitration under the FAA, two "gateway" issues need to be evaluated: (1) whether there is a valid

---

[8] Plaintiff will undoubtedly refer the Court to the rulings of Judge Chen striking down a prior version of the arbitration provision under California law.  *See Mohamed v. Uber Technologies, Inc.*, No. C-14-5200, 2015 U.S. Dist. LEXIS 75288 (N.D. Cal. June 9, 2015); *O'Connor v. Uber Technologies, Inc.*, 2015 U.S. Dist. LEXIS 165182, *20-*21 (N.D. Cal. 2015).  Those decisions are not binding here.  They are also wholly irrelevant, as the Arbitration Provision in the December 2015 Agreement was drafted specifically to address the concerns identified by Judge Chen in those rulings.

However, even as to the arbitration provision in the April 2015 Agreement (which Judge Chen did strike down under California law), Judge Chen's rulings have no bearing here.  In the *Mohamed* decision, Judge Chen relied upon an unconscionability analysis to find the arbitration provision at issue there was unenforceable as to a Massachusetts resident.  Judge Chen's decision, which is on appeal, was wrong at the time, given the express language of that arbitration provision limiting the application of substantive California law, *and* his own prior ruling that the substantive law of California does *not* apply extra-territorially.  *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1006 (N.D. Cal. 2014) (the alleged California "Labor Code violations upon which Plaintiffs rely do not apply extraterritorially and, therefore, cannot apply to those Plaintiffs or unnamed class members who worked in states other than California.").  However, Judge Chen subsequently acknowledged that recent California law, issued after the *Mohamed* decision, "cast doubt" upon his prior finding of unconscionability.  *O'Connor*, 2015 U.S. Dist. LEXIS 165182 at *19 ("Since the Court's ruling in *Mohamed*, the California Supreme Court's ruling in *Sanchez* [] cast doubt on the viability of the aspects of *Gentry* on which this Court relied . . . because *Gentry*'s required disclosure of the disadvantages of arbitration was not necessarily consistent with *Sanchez*'s ruling").  Judge Chen nevertheless struck down the arbitration provision in the April 2015 Agreement on public policy grounds in *O'Connor* because of a California-specific PAGA waiver.  This public policy rationale cannot conceivably be extended to non-residents and, therefore, Judge Chen's rulings should be disregarded.

agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *PacifiCare Health Sys. v. Book*, 538 U.S. 401, 407 n.2 (2003); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002); *National Union Fire. Ins. Co. v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir. 1996). Both gateway issues are clearly satisfied here. However, this Court need not even reach them and instead should order the case to arbitration, because the Arbitration Provision clearly provides that its validity and enforceability should be determined by an arbitrator.

### 1.     The Arbitration Provision delegates the gateway issues to the arbitrator

Before reaching the two gateway issues, a court must examine the underlying contract, to determine whether the parties have agreed to commit the threshold question of arbitrability to the arbitrator. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional antecedent agreement the party seeking arbitration asks the court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."); *Buckeye Check Cashing*, 546 U.S. at 446 ("the issue of the contract's validity is considered by the arbitrator in the first instance"). Accordingly, under *Rent-A-Center*, the Court is not permitted to address the issue of arbitrability. *See, e.g., Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400, 423 (E.D.N.Y. 2014) ("When the parties empower the arbitrator to decide 'arbitrability,' the Court's role is narrowed from deciding whether there is an applicable arbitration agreement to only deciding whether there is a valid delegation clause."); *Neal v. Asta Funding, Inc.*, No. 13-3438, 2013 U.S. Dist. LEXIS 170801, at **17-18 (D.N.J. Dec. 4, 2013) (where an arbitration agreement requires disputes concerning its validity to be decided by the arbitrator, "[q]uestions of arbitrability are committed in the first instance to the Arbitrator").

11

Here, the Arbitration Provision clearly and unmistakably provides that "disputes arising out of or relating to interpretation of application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision ... shall be decided by an Arbitrator."[9]  (Colman Decl. at Exh. D at § 15.3(i).)  Therefore, any question as to the validity of the Arbitration Provision and whether it applies to this dispute has been delegated to, and must be decided by, the arbitrator.

Judge Douglas L. Rayes, of the District of Arizona, recently reached this same conclusion.  In *Sena v. Uber Technologies, Inc.*, Case No. 2:15-cv-02418-DLR, Defendants moved to dismiss, compel individual arbitration, and strike plaintiff's class claims under an arbitration provision similar to the one at issue in this case.  Plaintiff David Sena, represented by the same firm that represents Plaintiff Mallh, attempted to evade his obligation to arbitrate, arguing that the arbitration provision to which he agreed was unconscionable.  Judge Rayes granted Defendants' motion.  Judge Rayes held that the parties clearly and unmistakably delegated issues of arbitrability to the arbitrator, and found that the delegation clause was not unconscionable. *Sena v. Uber Technologies, Inc.*, Case No. 2:15-cv-02418-DLR, pp.  (D. Ariz. April 7, 2016).[10]

### 2.     The gateway issues under the FAA have been satisfied

If this Court disagrees and finds that it, rather than the arbitrator, should evaluate the enforceability and interpretation of the Arbitration Provision, both of the "gateway" issues have been satisfied here.

---

[9]  The Arbitration Provision, however, does expressly leave for the Court to rule on the enforceability of the Class Action Waiver.  Accordingly, Defendants request that the Court find the Class Action Waiver enforceable and delegate all other disputes regarding enforceability and validity of the Arbitration Provision to the arbitrator.

[10]  A true and correct copy of Judge Rayes' decision is attached hereto as "**Exhibit A.**"

### a.      A valid agreement to arbitrate exists

General contract law principles apply to the interpretation and enforcement of arbitration agreements. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Plaintiff's claims must be referred to arbitration because the Arbitration Provision is a binding agreement under state law principles of contract formation. *Brown v. St. Paul Travelers Cos.*, 559 F. Supp. 2d 288, 291 (W.D.N.Y. 2008 ) ("courts employ 'ordinary principles of contract and agency' in order to determine whether the parties have a agreed to arbitrate") (quoting *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776-77 (2d Cir. 1995)).

Similar to other drivers in New York, Plaintiff (i) twice affirmatively acknowledged his intent, after ample opportunity to review, to be bound by the terms of the December 2015 Agreement, including the Arbitration Provision; and (ii) had 30 days after accepting to review the Arbitration Provision and consider whether to opt out, but did not do so.[11] Accordingly, Plaintiff's acceptance was clear and unequivocal, and a valid agreement to arbitrate exists.

### b.      Plaintiff's claims fall within the scope of the Agreement

The FAA requires courts to apply a presumption in favor of arbitrability. *See Moses H. Cone*, 460 U.S. at 24-25. In fact, courts must defer to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).

---

[11] As discussed above, Plaintiff also did not opt out of the arbitration provision in the April 2015 Agreement. *See Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1075-77 (9th Cir. 2014) (individual who is provided the opportunity to opt out of an arbitration agreement is "free not to arbitrate," and, in declining that opportunity, the employee makes the choice to arbitrate his or her potential claims); *Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 636 (7th Cir. 1999) (distinguishing mandatory arbitration agreement from one in which individual is free to opt out).

This case does not present a close call. Here, Plaintiff specifically agreed to arbitrate "disputes arising out of or related to [Plaintiff's] relationship with Uber," "disputes arising out of or related to [the parties'] Agreement," and "disputes regarding any … state of federal wage-hour law … compensation, breaks and rest periods, expense reimbursement, … and state statutes, … and all other similar federal and state statutory and common law claims." (Colman Decl., Exh. D at § 15.3(i).) The phrase "arising out of or relating to" an underlying agreement is frequently deemed to be the broadest language available. *See Southland Corp. v. Keating*, 465 U.S. 1, 16 n. 7 (1984). Given this, and the strong presumption in favor of arbitrability, Plaintiff's claims under the NYLL, as well as his contract, quasi-contract, and tort claims under New York State common law, all fall squarely within the scope of the agreement to arbitrate.

Accordingly, the "gateway" issues under the FAA are met, and Plaintiff must be ordered to arbitrate.

### C.    Plaintiff's class claims cannot proceed

The Court should also order the parties to arbitrate Plaintiff's claims solely on an individual basis. "The FAA reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center West*, 561 U.S. at 67. Section 4 of the FAA provides that a party may obtain an order compelling arbitration "in the manner provided for in [the parties'] agreement." 9 U.S.C. § 4.

Similarly, section 3 of the FAA authorizes federal courts to stay litigation until the arbitration has been conducted "in accordance with the terms of the [parties' arbitration] agreement . . . [.]" 9 U.S.C. § 3. The "primary purpose" of the FAA is "ensuring that private agreements to arbitrate are enforced according to their terms." *Volt Info. Sciences v. Bd. of Trustees*, 489 U.S. 468, 479 (1989); *see Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52,

53-54 (1995) (enforcement of arbitration agreements "according to their terms" is the "central purpose" of the FAA); *see Concepcion*, 131 S. Ct. at 1748 (same).

The Supreme Court has made abundantly clear that parties to an arbitration agreement are free to set the terms of their agreement. *Volt Info. Scis., Inc. v. Bd. Of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) (parties may "specify by contract the rules under which that arbitration will be conducted.")  Taking its lead from the Supreme Court, the Seventh Circuit Court of Appeals has described that leeway in the following rather raw terms: "Indeed, short of authorizing trial by battle or ordeal or, more doubtfully, by a panel of three monkeys, parties can stipulate to whatever procedures they want to govern the arbitration of their disputes." *Baravati v. Josephthal, Lyon & Ross*, 28 F.3d 704, 709 (7th Cir. 1994).

Terms parties are free to agree upon include a provision precluding class and collective adjudication.  As the Supreme Court confirmed in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 664 (2010), it is improper to force a party into a class proceeding to which is did not agree, because arbitration "is a matter of consent."  Parties "may specify with whom they choose to arbitrate their disputes." *Id.* at 683 (emphasis in original).  As such, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Id.* at 684.

Here, the parties did not agree to class arbitration.  Instead, they expressly prohibited class claims: "**You and Uber agree to resolve any dispute that is in arbitration on an individual basis only, and not on a class or collective action basis ("Class Action Waiver").**"  The Arbitration Provision further provides that "**this Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an**

**individual basis only and not by way of court or jury trial, or by way of class, collective, or representative (non-PAGA) action.**" (Colman Decl., Exh. D at § 15.3(i), (v); bold in original.)

In *Concepcion,* the Supreme Court upheld the enforceability of class waivers in FAA-governed arbitration agreements, reaffirming the bedrock principle that arbitration agreements must be enforced as written. The Court held that the California Supreme Court's rule restricting enforcement of class action waivers was preempted by the FAA, because it interfered with the fundamental attributes of arbitration and created a scheme inconsistent with the FAA. *See* 131 S. Ct. at 1753.[12]

The Supreme Court in *Italian Colors Restaurant* reiterated that courts "must rigorously enforce" arbitration agreements according to their terms, including terms that "specify with whom [the parties] choose to arbitrate their disputes." 133 S. Ct. 2304, 2309 (2013). The Court reversed the Second Circuit and enforced a class action waiver in an arbitration agreement, ruling that such a waiver in a FAA-governed arbitration agreement is enforceable, even if the plaintiff's costs of individually arbitrating a claim exceed the potential individual recovery. *Id.* at 2311-12.

---

[12] The Supreme Court also explained that class arbitration was inconsistent with the fundamental attributes of arbitration as contemplated by the FAA. *Concepcion*, 131 S. Ct. at 1750-51. In particular, the Court stated that class arbitration sacrificed the principal advantage of arbitration – its informality – and rendered the process slower and more costly. *Id.* at 1751-52. The Court further noted it was unlikely Congress intended to have an arbitrator address the more formal procedural requirements of a class proceeding. *Id.* Finally, the Court opined that arbitration was poorly suited to the higher stakes of class litigation and significantly increased the risks to defendants, especially given the absence of multilayered judicial review. *Id.* at 1752. Accordingly, because the Supreme Court concluded that California's *Discover Bank* rule effectively forced parties into class arbitration as a condition of enforcement of their arbitration agreement, and because class arbitration interfered with the fundamental attributes of arbitration, including the paramount principle that arbitration agreements are to be enforced as written, the Court held that the *Discover Bank* rule was inconsistent with the FAA and thus preempted. *Id.* at 1754.

16

For these reasons, courts faced with arbitration agreements containing express class action waivers consistently uphold their enforceability and compel arbitration on an individual basis. *See, e.g., Sutherland v. Ernst & Young LLP*, 726 F.3d 290 (2d Cir. 2013) (upholding class action waiver and reversing district court's decision to deny motion to compel arbitration of plaintiffs' FLSA and NYLL overtime claims); *Torres v. United Healthcare Servs.*, 920 F. Supp. 2d 368 (E.D.N.Y. 2013) (compelling arbitration of plaintiff's collective FLSA claims on an individual basis); *Ryan v. JPMorgan Chase & Co.*, 2013 U.S. Dist. LEXIS 24628, at *9-10 (S.D.N.Y. Feb. 21, 2013) (enforcing class arbitration waiver in FLSA case, and granting defendant's motion to dismiss and compel arbitration of plaintiff's claim on an individual basis).

Accordingly, the Class Action Waiver in the Arbitration Provision must be enforced as written, and Plaintiff cannot proceed with his class claims before this Court, or in an arbitral forum on other than an individual basis.  Plaintiff's class claims should thus be stricken.

## IV.    CONCLUSION

Because the parties entered into a valid contract requiring the submission of any disputes arising out of Plaintiff's relationship with Defendants to be decided in arbitration on an individual basis, and this dispute falls within the scope of that agreement, this Court should order Plaintiff to individually arbitrate his claims against Defendants, dismiss his claims, and strike his class allegations.

Respectfully submitted,

Dated: April 11, 2016
       New York, New York

_/s/ Andrew Spurchise_
David M. Wirtz
Andrew M. Spurchise

LITTLER MENDELSON, P.C.
900 Third Avenue, 8th Floor
New York, New York 10022
(212) 583-9600

_Attorneys for Defendants_
Uber Technologies, Inc. and Rasier, LLC

18