# EXHIBIT A

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Sena, | No. CV-15-02418-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Uber Technologies Incorporated, et al., | |
| Defendants. | |

Before the Court is Defendants Uber Technologies, Inc. and Rasier, LLC's Motion to Dismiss, Compel Individual Arbitration and Strike Class Allegations.[1] (Doc. 12.) For the following reasons, Defendants' motion is granted.[2]

## BACKGROUND

"Uber is a car service that provides drivers who can be hailed and dispatched through a mobile application." (Doc. 1-1, ¶ 16.) Rasier is a subsidiary of Uber. (*Id.*, ¶ 3.) Plaintiff David Sena worked for Uber as an UberX driver from December 2012 through the end of 2014. (*Id.*, ¶ 19.) On June 21, 2014, via smartphone application, Sena electronically agreed to abide by the terms of the "Rasier Software Sublicense & Online

---

[1] Plaintiff David Sena filed a Motion to Stay Proceedings Pending the Judicial Panel on Multidistrict Litigation's ("JPML") Decision to Transfer. (Doc. 17.) On February 3, 2016, the JPML denied Plaintiff's motion for centralization of several related cases in another district pursuant to 28 U.S.C. § 1407. (Doc. 23.) Consequently, Plaintiff's motion is denied as moot.

[2] Defendants' request for oral argument is denied. The issues are fully briefed, and the Court finds oral argument will not aid the resolution of the motion. *See Mahon v. Credit Bur. of Placer Cty.*, 171 F.3d 1197, 1200 (9th Cir. 1999).

Services Agreement" (the "Rasier Agreement"), (Doc 12-1 at 6-22), which includes an Arbitration Provision, (*Id.* at 16-20).[3] The Arbitration Provision provides, in relevant part:

> IMPORTANT: This arbitration provision will require you to resolve any claim that you may have against the Company or Uber on an individual basis pursuant to the terms of the Agreement unless you choose to opt out of the arbitration provision. This provision will preclude you from bringing any class, collective, or representative action against the Company or Uber. It also precludes you from participating in or recovering relief under any current or future class, collective, or representative action brought against the Company or Uber by someone else.

(*Id.* at 16.) It further provides:

> **Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial, or by way of class, collective, or representative action.**

(*Id.* at 17 (emphasis in original).) It also contains a Delegation Clause, which provides:

> Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision. All such matters shall be decided by an Arbitrator and not by a court or judge.

(*Id.*) Near the end of the Arbitration Provision, there is a section entitled "Your Right to Opt Out of Arbitration," which states:

> **Arbitration is not a mandatory condition of your contractual relationship with the Company. If you do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration by notifying the Company in writing of your desire to opt out of this Arbitration Provision, either by (1) sending, within 30 days of the date this Agreement is executed by you, electronic mail to <u>optout@uber.com</u>, stating your name and intent to opt out of the Arbitration Provision or (2) by sending a letter by U.S. Mail, or by any nationally recognized delivery service (*e.g.*, UPS, Federal; Express, etc.), or by hand delivery**

---

[3] These agreements appear when the Uber application is opened on a smartphone. When Uber updates the terms of the agreements, they appear the next time the Uber driver opens the application. The driver must accept the terms to continue driving, and each agreement supersedes the terms of the prior agreement. *See Mohamed v. Uber Tech., Inc.*, 109 F. Supp. 3d 1185, 1190-92 (N.D. Cal. 2015).

**to [Raiser's legal department].**

(*Id.* at 20 (emphasis in original).)

On September 18, 2015, Sena filed a seven count class action complaint on behalf of former and current Uber drivers against Defendants in Maricopa County Superior Court. (Doc. 1-1.) On November 25, 2015, Defendants removed the case to this Court pursuant to 28 U.S.C. § 1332. (Doc. 1.) Shortly thereafter, Defendants moved to dismiss the action, compel arbitration of Sena's claims, and strike the class allegations in the complaint. (Doc. 12.)

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate disputes arising out of transactions involving interstate commerce "shall be valid, irrevocable, and enforceable except upon grounds that exist at common law for the revocation of a contract." 9 U.S.C. § 2; *see AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) (discussing liberal federal policy favoring valid arbitration agreements). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). The court's role is to answer two gateway questions: (1) does a valid agreement to arbitrate exist, and (2) does the agreement encompass the dispute at issue. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If both questions are answered in the affirmative, the court must compel arbitration.

"Where a contract contains an arbitration clause, courts apply a presumption of arbitrability as to particular grievances, and the party resisting arbitration bears the burden of establishing that the arbitration agreement is inapplicable." *Wynn Resorts, Ltd. v. Atl.–Pac. Capital, Inc.*, 497 F. App'x 740, 742 (9th Cir. 2012) (internal citations omitted); *see also AT&T Mobility*, 563 U.S. at 339 ("We have described [§ 2 of the FAA] as reflecting . . . a 'liberal federal policy favoring arbitration[.]'"). Despite the federal

policy favoring arbitration, "state law is not entirely displaced from federal arbitration analysis. . . . [G]enerally applicable [state law] contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Ticknor v. Choice Hotels Intern.*, 265 F.3d 931, 936-37 (9th Cir. 2001) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686 (1996)). However, "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006).

Parties may also agree to delegate gateway issues of arbitrability to the arbitrator, even though these issues presumptively are reserved for the court. *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011); *see also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 69-70 (2010) (holding that delegation of authority to arbitrator to determine the enforceability and scope of arbitration agreement was valid under FAA). A discrete agreement to submit gateway arbitrability questions to the arbitrator is treated as "an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce[.]" *Rent-A-Ctr.*, 561 U.S. at 70. In other words, a delegation provision is severable from the contract in which it is embedded, and challenges to the validity of the latter must be considered by the arbitrator in the first instance. *Id.* at 70-72.

However, the same presumption of arbitrability does not apply to agreements delegating authority over these gateway issues. Rather, "the Supreme Court has cautioned that '[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so.'" *Momot*, 652 F.3d at 987 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "Such '[c]lear and unmistakable evidence of agreement to arbitrate arbitrability might include . . . a course of conduct demonstrating assent . . . or . . . an express agreement to do so.'" *Id.* (quoting *Rent-A-Ctr.*, 561 U.S. at 79-80).

## ANALYSIS

Sena does not dispute that a valid contract was formed when he assented to the

- 4 -

Rasier Agreement by clicking the box labeled "YES, I AGREE" on his Uber smartphone app, or that he did not opt out of the Arbitration Provision.[4] (Doc. 12-1 at 2-4.) Nonetheless, he argues that he should not be bound to arbitrate his claims because the Arbitration Provision is unconscionable. Defendants argue that, through the Delegation Clause, the parties clearly and unmistakably agreed to arbitrate questions of arbitrability. As a threshold matter, then, the Court must determine whether the parties' intent is clear and unmistakable and, if so, whether such delegation is enforceable under general contract principles.

**I. Clear and Unmistakable Intent**

The Delegation Clause provides that "disputes arising out of or relating to interpretation or application of this Arbitration Provision, *including the enforceability, revocability or validity of the Arbitration Provision* or any portion of the Arbitration Provision . . . shall be decided by an Arbitrator and not by a court or judge." (*Id.* at 17 (emphasis added).) Despite this language, Sena argues that the parties' intent is ambiguous.

Sena relies almost exclusively on *Mohamed v. Uber Technologies, Inc.,* 109 F. Supp. 3d 1185 (N.D. Cal. 2015). In that case, two individuals, Ronald Gillette and Abdul Mohamed, filed a class action lawsuit on behalf of all Uber drivers in federal district court challenging Uber's use of background checks in its employment decisions. *Mohamed*, 109 F. Supp. 3d at 1189. As a condition of employment, both Gillette and Mohamed accepted the terms of Uber's "Software License and Online Agreement," which contained an arbitration clause, by clicking "Yes, I agree" on their smartphone app. *Id.* at 1190-91. Citing the plaintiffs' assent to the agreement, Uber moved to compel arbitration of their claims. *Id.*

*Mohamed* analyzed three of Uber's online service agreements: the 2013 Agreement, the 2014 Agreement, and the 2014 Raiser Agreement. *Id.* at 1192-94. Each

---

[4] Sena argues that he opted out of the arbitration provision on December 15, 2015. (Doc. 20 at 2.) By that time, however, Sena had not driven for Uber for over a year. (Doc. 1-1, ¶ 19.)

- 5 -

agreement was governed by California law and contained an arbitration provision with a clause delegating questions of enforceability and validity of the arbitration provision to an arbitrator.[5] *Id.* at 1193. The court determined that the Delegation Clauses did not clearly and unmistakably show that the parties intended to refer arbitrability questions to the arbitrator. *Id.* at 1201-04. Although the court acknowledged that similar language had been deemed sufficiently clear and unmistakable evidence in *Rent-A-Center*, it nonetheless found that, when "read in context with other relevant contract provisions" in the Raiser Agreement, several inconsistencies rendered the Delegation Clauses ambiguous under California law. *Id.* at 1199. For example, the Raiser Agreements provided that "the state and federal courts in San Francisco will have '*exclusive jurisdiction*' of '*any* disputes, actions, claims, or causes of action arising out of or in connection with [the agreements].'" *Id.* at 1201 (quoting the 2014 Agreement) (emphasis in original). The court determined this language was inconsistent with the Delegation Clauses' mandate that all disputes are subject to arbitration. *Id. Mohamed*, however, is not controlling authority, nor does this Court find its reasoning persuasive.

The Supreme Court and the Ninth Circuit repeatedly have concluded that similar delegation language is sufficiently clear and unmistakable evidence that the parties intended to arbitrate questions of arbitrability. *See e.g.*, *Rent-A-Ctr.*, 561 U.S. at 68; *Momot*, 652 F.3d at 988 (language delegating to the arbitrator the authority to determine "the validity or application of any of the provisions" of the arbitration clause was clear and unmistakable); *Tuminello v. Richards*, 504 F. App'x 557, 558 (9th Cir. 2013) (language providing that an arbitrator shall decide "any and all controversies . . . concerning any account(s), transaction, dispute or the construction, performance, or breach of this or any other Agreement" was sufficiently clear and unmistakable to delegate arbitrability); *Fadal Machining Ctrs., LLC v. Compumachine, Inc.*, 461 F. App'x 630, 632 (9th Cir. 2011) (language providing that any disputes "arising out of or

---

[5] The agreements and provisions addressed in *Mohamed* are the same as those at issue in this case. The Court will refer to them interchangeably as the Raiser Agreement, Arbitration Provision, and Delegation Clause.

- 6 -

relating to" the arbitration provision would be reserved for the arbitrator was sufficient evidence of an intent to clearly and unmistakably delegate arbitrability). The Court sees no reason to deviate from these authorities, particularly when the central purpose of the FAA "is to ensure that private agreements to arbitrate are enforced according to their terms." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2012) (internal quotations omitted).

Moreover, *Mohamed*'s approach is in tension with Supreme Court and Ninth Circuit authority regarding the severability of arbitration provisions. As previously noted, Courts distinguish between challenges to an arbitration provision and challenges to a larger contract within which an arbitration provision is embedded. The nature of the challenge determines the scope of a court's jurisdiction over it. The Rasier Agreement and the embedded agreement to submit questions of arbitrability to the arbitrator must, therefore, be treated as separate contracts. The Arbitration Provision spans pages 11-15 of the Rasier Agreement, concluding with the heading "Enforcement of This Agreement" on page 15. (Doc. 12-1 at 16-20.) The remainder of the Agreement, beginning with the heading "Notice" at the bottom of page 15, sets forth additional terms applicable to the Agreement as a whole; it does not mention arbitration specifically. (*Id.* at 20.) The Court is not convinced that it may look beyond the four corners of the Arbitration Provision to find ambiguity, as the court did in *Mohamed*. Without controlling guidance on this point, the Court will strictly apply severability principles and confine its analysis to the discrete agreement to arbitrate. Given the plain language of the Delegation Clause, the Court finds that the parties clearly and unmistakably intended to arbitrate questions of arbitrability.

**II. Unconscionability**

Notwithstanding the parties' clear and unmistakable intent to arbitrate questions of arbitrability, the Delegation Clause may be unenforceable if it is unconscionable. *Rent-A-Ctr.*, 561 U.S. at 72-74. When assessing whether a delegation clause is unconscionable, a court must sever it from the arbitration provision in which it is

1 embedded. "It is not sufficient to prove that the arbitration provision as a whole, or other
2 parts of the contract, are unenforceable." *Id.* at 71-74. Because unconscionability is a
3 question of state contract law, *Omstead v. Dell, Inc.*, 594 F.3d 1081, 1085 (9th Cir. 2010),
4 the Court first must determine which state's law applies.

### A. Choice of Law

A federal court sitting in diversity applies the forum state's choice of law rules. *Bridge Fund Capital Corp.*, 622 F.3d at 1002 (quoting *Hoffman v. Citibank (S.D.), N.A.*, 546 F.3d 1078, 1082 (9th Cir. 2008)). Arizona's choice of law rules dictate that "[i]n the absence of an explicit choice of law by the parties, the contractual rights and duties of the parties are determined by the local law of the state having the most significant relationship to the parties and the transaction." *Cardon v. Cotton Lane Holdings, Inc.*, 841 P.2d 198, 202 (Ariz. 1992). Sena urges the Court to apply California law to the question of unconscionability because the Rasier Agreement contains a California choice of law provision, found in a section labeled "General" on page 17 of the Agreement. (Doc. 12-1 at 22.) But the Court must confine its analysis to the Arbitration Provision, which contains no choice of law provision. Given that Uber does business in Arizona, Sena lives in Arizona and worked as an Uber driver in Arizona, and the parties entered into the Raiser Agreement in Arizona, Arizona has the most significant relationship to this litigation.

Under Arizona law, unconscionability has both procedural and substantive elements. *Maxwell v. Fidelity Fin. Servs., Inc.*, 907 P.2d 51, 58-59 (Ariz. 1995). However, an agreement may be found unenforceable based on substantive unconscionability alone. *Id.* at 59.[6] Sena argues that the Delegation Clause is both

---

[6] In this respect, although the tests for unconscionability under Arizona and California law are substantially similar, Arizona law is more favorable to parties seeking to invalidate an agreement. California requires a showing of both procedural and substantive unconscionability, balanced on a sliding scale, meaning "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Gentry v. Superior Court*, 165 P.3d 556, 572 (Cal. 2007) (abrogated on other grounds). In other words, "a conclusion that a contract contains no element of procedural unconscionability is tantamount to saying that, no matter how one-sided the

- 8 -

procedurally and substantively unconscionable.

## B. Procedural Unconscionability

Procedural unconscionability addresses the fairness of the bargaining process. It is "concerned with 'unfair surprise,' fine print clauses, mistakes or ignorance of important facts or other things that mean bargaining did not proceed as it should." *Clark v. Renaissance W., LLC*, 307 P.3d 77, 79 (Ariz. Ct. App. 2013) (quoting *Maxwell*, 907 P.2d at 57-58). Contracts offered on a "take it or leave it" basis, commonly known as "adhesion contracts," are often found procedurally unconscionable because they deprive a party of its contractual right to bargain. *Broemmer v. Abortion Servs. of Phx., Ltd.*, 840 P.2d 1013, 1015 (Ariz. 1992). The defining feature of an adhesion contract is that one party has no realistic choice as to its terms. *Id.* at 1016.

Relying on *Mohamed*, Sena argues that the Delegation Clause is necessarily an adhesion contract because it is part of the Raiser Agreement, which was offered on a take it or leave it basis. (Doc. 20 at 12.) He also asserts that the Delegation Clause is procedurally unconscionable because it is oppressive, results in "unfair surprise," and is "buried in the arbitration provision" at page 15 and not marked by a separate header. (*Id.* at 13.) The Court disagrees.

In *Mohamed*, the court found the Delegation Clause procedurally unconscionable because it satisfied both the "surprise" and "oppression" elements of California's unconscionability test. The "surprise" element was satisfied because the clause was "hidden in Uber's 'prolix form.'" *Mohamed*, 109 F. Supp. 3d at 1211. The "oppression" element was a much closer call because the Arbitration Provision's opt-out clause was "visually conspicuous" and provided drivers with "a reasonable means of opting out." *Id.* at 1211-12. Despite these findings and admitting that it was "an extremely close call," the court held that "Mohamed's ability to opt-out of the delegation clause was not sufficiently meaningful to eliminate *all* oppression from the contract," and the Delegation

---

contract terms, a court will not disturb the contract because of its confidence that the contract was negotiated or chosen freely . . . ." *Id.* at 573.

- 9 -

1 Clause was procedurally unconscionable under California law.  *Id.* at 1216 (emphasis in
2 original).

3 *Mohamed*'s finding of "surprise" was based on a conclusion that the Raiser
4 Agreement as a whole was adhesive.  But, as previously noted, the Court must confine its
5 analysis to the language of the challenged "agreement to arbitrate" and not look at the
6 agreement as a whole.  *Rent-A-Ctr.*, 561 U.S. at 72.  Likewise, Sena's argument that the
7 Raiser Agreement is an adhesion contract and therefore, as part of the Raiser Agreement,
8 the Arbitration Provision and Delegation Clause are necessarily adhesion contracts is, of
9 course, a challenge to the entire Raiser Agreement.  Because the Court must confine its
10 analysis to the language of the specific "agreement to arbitrate," Sena's argument is
11 outside the scope of the Court's review.

12 Additionally, Sena's argument that the Delegation Clause results in unfair surprise
13 is unpersuasive. The Delegation Clause is not hidden or "buried" in the Arbitration
14 Provision.  It appears on the second page of the Arbitration Provision, in normal font,
15 conspicuously marked by the header, "How This Arbitration Provision Applies."  (Doc.
16 12-1 at 17.)  Moreover, the conspicuous opt-out provision and its accompanying language
17 undermine Sena's argument that the Arbitration Provision and Delegation Clause were
18 contracts of adhesion.  The first page of the Arbitration Provision provides:

19
20
21 > IMPORTANT: This arbitration provision will require you to resolve any claim that you may have against the Company or Uber on an individual basis pursuant to the terms of the Agreement *unless you choose to opt out of the arbitration provision.*

22 (*Id.* at 16 (emphasis added).)  Importantly, the last page of the Arbitration Provision
23 conspicuously states: "**Arbitration is not a mandatory condition of your contractual**
24 **relationship with the Company.  If you do not want to be subject to this Arbitration**
25 **Provision, you may opt out . . . in writing . . . within 30 days . . . [via email or U.S.**
26 **Mail].**"  (*Id.* at 20.)  Sena had the opportunity to opt out of arbitrating his claims.  Even
27 as the party with less bargaining power, Sena had the ability to reject the Arbitration
28 Provision without consequence to his employment.  And in any event, "[t]here is [no]

- 10 -

Arizona law supporting the assertion that a finding of adhesion equates to a finding of procedural unconscionability." *R & L Ltd. Inv., Inc. v. Cabot Inv. Prop., LLC*, 729 F. Supp. 2d 1110, 1115 (D. Ariz. 2010).

Sena argues that, notwithstanding the opt-out provision, he did not have a meaningful opportunity to negotiate any terms and he "could either wholly accept the agreement, or not work for Uber." (Doc. 20 at 14.) He points to the California Supreme Court's decision in *Gentry*, which held that an opt-out provision in an arbitration agreement embedded in an employee handbook did not rid the agreement of all procedural unconscionability because the terms of the handbook were "markedly one-sided," and "it [was] not clear that someone in [the plaintiff's] position would have felt free to opt out." 165 P.3d at 573-74. Further, the court noted that "it is likely that [the] employee felt at least some pressure not to opt out of the arbitration agreement." *Id.* at 574. But *Gentry* is not controlling, and Sena does not argue that he felt pressure to not opt-out of the Arbitration Provision. Rather, Uber made it clear that arbitration was not required of its drivers. The statement that "Arbitration is not a mandatory condition of your contractual relationship with the Company" appears twice in the Arbitration Provision, the first preceded by the word "IMPORTANT" in all capital letters, and the second in a paragraph with all bold text. The opt-out clause appears prominently in the Arbitration Provision, and Sena has not persuaded the Court that his ability to opt-out of the Provision was not meaningful. Therefore, because Sena was not required to accept the Arbitration Provision, the Delegation Clause is not procedurally unconscionable.[7]

### C. Substantive Unconscionability

Substantive unconscionability is concerned with the fairness of the terms in the contract. *Maxwell*, 907 P.2d at 58. It is present "when the terms of the contract are so one-sided as to be overly oppressive or unduly harsh to one of the parties." *Clark*, 307 P.3d at 79. Factors that indicate substantive unconscionability include one-sided terms,

---

[7] The fact that arbitration was the default mechanism does not make it procedurally unconscionable. Such a conclusion would undermine the FAA's policy favoring arbitration of claims when possible.

- 11 -

1 oppressive terms, an overall imbalance in obligations and rights imposed by the contract, and significant cost-price disparity. *Maxwell*, 907 P.2d at 58.

Sena again relies on *Mohamed* to argue that the Delegation Clause is substantively unconscionable. In *Mohamed*, the court found the Delegation Clause substantively unconscionable to a significant degree because the Agreement "impermissibly subject[s] Uber drivers to the risk of having to pay significant forum fees, and because drivers are required to advance their share of such fees simply to start the arbitration." *Mohamed*, 109 F. Supp. 3d at 1211. It found Mohamed made a sufficient showing that, in arbitration, he would be subject to hefty fees of a type that he would not be subject to in court. *Id.* at 1208. Likewise, Sena contends that under the Agreement's fee-splitting clause, he and other Uber drivers would be "subject to hefty fees" in individual arbitration that would "chill them from exercising their rights."[8] (Doc 20 at 14.)

The fee-splitting clause is found on the first page of the Arbitration Provision. It provides:

> Unless the law requires otherwise, as determined by the Arbitrator based upon the circumstances presented, you will be required to split the cost of any arbitration with the Company.

(Doc. 12-1 at 16.) This case is distinguishable from *Mohamed*, however, because Sena has not produced evidence that his cost to individually arbitrate questions of arbitrability would be prohibitively expensive. (Doc. 20 at 15.) As the party challenging the validity of the arbitration agreement, Sena has the burden of producing evidence that the clause is prohibitively expensive for him. Sena does not satisfy that burden simply by pointing to *Mohamed*, and invalidating the Delegation Clause based on mere speculation "would undermine the liberal federal policy favoring arbitration." *Harrington v. Pulte Home*

---

[8] Additionally, Sena supports his unconscionability argument by pointing to several provisions in the Raiser Agreement that are not part of the Arbitration Provision. For example, he cites *Mohamed* as authority for the proposition that the confidentiality, IP carve-out, and unilateral modification provisions are substantively unconscionable. (Doc. 20 at 16.) Those provisions are found on Pages 6, 8, and 16 of the Agreement, respectively. The Court cannot consider whether those provisions are unconscionable because its unconscionability analysis is limited to the parties' discrete agreement to arbitrate questions of arbitrability.

- 12 -

1 2 *Corp.*, 119 P.3d 1044, 1055 (Ariz. Ct. App. 2005) (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000)).

3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 Sena also argues that the Arbitration Provision's class action waiver is substantively unconscionable. (Doc. 20 at 15.) The relevant language is found on page 11, and states: "This provision will preclude you from bringing any *class, collective, or representative action* against the Company or Uber." (Doc. 12-1 at 16 (emphasis added).) Sena, pointing to *Mohamed*, insists that the class action waiver is substantively unconscionable as a matter of public policy. (Doc. 20 at 16.) However, in *AT&T Mobility*, the Supreme Court held that the FAA preempted California's rule that class action waivers in adhesion contracts were unconscionable under California law if the dispute involved small amounts of damages because the rule stood "as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting the FAA. 563 U.S. at 352. Here, the Arbitration Provision is governed by the FAA. (Doc. 12-1 at 17.) A ruling that the class action waiver is unconscionable would conflict with *AT&T Mobility* and impede the purpose of the FAA, which is to "ensure the enforcement of arbitration agreements according to their terms so as to facilitate informal, streamlined proceedings." *AT&T Mobility*, 563 U.S. at 334. Accordingly, the Delegation Clause is not substantively unconscionable.

## **CONCLUSION**

20 21 22 23 24 25 26 27 28 The Court must compel Sena to submit to arbitration because the parties entered into a valid and enforceable agreement to arbitrate questions of arbitrability. Defendants request that the Court dismiss this action. (Doc. 12 at 16-17.) "Pursuant to [§ 3 of the FAA], the Court is required to stay proceedings pending arbitration if the Court determines that the issues involved are referable to arbitration under a written arbitration agreement." *Meritage Homes Corp. v. Hancock*, 522 F. Supp. 2d 1203, 1211 (D. Ariz. 2007). The Court, in its discretion, may also dismiss the case. *See id.* Here, although the case will proceed to arbitration, the Court will retain jurisdiction to enforce any arbitral award and stay this matter pending arbitration.

**IT IS ORDERED** that Defendants Uber Technologies, Inc. and Rasier, LLC's Motion to Dismiss, Compel Individual Arbitration and Strike Class Allegations, (Doc. 12), is **GRANTED**, and Plaintiff's Motion to Stay, (Doc. 17), is **DENIED**. Sena's class allegations are stricken from the complaint. The Clerk is directed to close this case, whereupon, by proper motion of the prevailing party at arbitration, it may be reopened or dismissed with prejudice.

Dated this 7th day of April, 2016.

Douglas L. Rayes
United States District Judge