UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MANZOOR MUMIN and VICTOR MALLH, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>UBER TECHNOLOGIES, INC. and RASIER, LLC,<br><br>Defendants. | Case No: 1:15-cv-06143 (NGG) (VMS)<br><br>**DECLARATION OF MICHAEL COLMAN IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION, DISMISS PLAINTIFF MALLH'S CLAIMS, AND STRIKE PLAINTIFF'S ALLEGATIONS** |

I, MICHAEL COLMAN, hereby declare and state:

1. The information set forth herein is true and correct of my own personal knowledge (unless otherwise stated) and if asked to testify thereto, I would do so competently.

2. I am currently employed as an Operations Specialist at the San Francisco headquarters of Uber Technologies, Inc. ("Uber"). I have been employed by Uber since October 19, 2011, and have worked as an Operations Specialist since February 2013. In that role, I consult with operations teams throughout the country regarding nearly every facet of Uber's operations and have comprehensive personal knowledge of Uber's business model, as well as the operations of Uber's wholly-owned subsidiaries, including Defendant Rasier, LLC ("Rasier") and its affiliated companies, and Uber USA, LLC ("Uber USA").

3. Uber is a San-Francisco based company that acts as a conduit between individuals looking for transportation, and independent transportation providers looking for riders ("drivers"). Uber provides the technology, through its smartphone application (the "app"), that allows riders and drivers to connect based on their location. Uber offers the app as a tool to both riders and drivers to facilitate transportation services, and it charges a service fee to drivers for

1

use of the app.

4. Using the app, riders can connect with available drivers offering a variety of transportation options through several different platforms, including, but not limited to, UberBLACK, UberSUV, and uberX. The UberBLACK platform connects riders to limousines or town cars operated by transportation companies. The UberSUV platform connects riders to luxury sport utility vehicles operated by transportation companies. The uberX platform connects riders to vehicles operated by private individuals (*i.e.*, the product includes "ridesharing" or "peer-to-peer" services), as well as vehicles operated by transportation companies. Uber USA, a wholly-owned subsidiary of Uber, contracts with drivers that desire to use the UberBLACK platform to generate leads for potential riders, including in New York. Rasier does not conduct business in New York.

5. The app is available to riders and drivers in over 150 cities across the country.

6. As an Operations Specialist for Uber, I am familiar with the process drivers must go through to sign up to use the app and the various documents to which they must assent in order to use the app. I also have access to Uber's business records reflecting the identity of drivers that use the app, as well as the individuals whom these drivers have engaged. These records are maintained in the regular course of Uber's business and updated as new drivers join and leave the system.

7. Any driver who wishes to access the UberBLACK platform to generate leads for potential riders must first enter into the agreement with Uber USA to use the app. In New York City, drivers also need to comply with applicable rules and regulations promulgated by the Taxi and Limousine Commission ("TLC") before accessing the platform to generate leads for potential riders.

8. In order to electronically accept the operative agreement, a driver must first login to the app where the agreement is available for review by clicking a hyperlink presented on the screen. Drivers are free to spend as much time as they wish reviewing the agreement on their smartphones. However, to advance past the screen with the hyperlink to the agreement and actively use the app, drivers need to click "YES, I AGREE" to the agreement presented. After clicking "YES, I AGREE," drivers are prompted to confirm their acceptance a second time. A true and correct copy of the "YES, I AGREE" screenshot is attached hereto as **Exhibit A**. A true and correct copy of the confirmation screenshot is attached hereto as **Exhibit B**. After drivers accept the agreement, the agreement is automatically transmitted to their Driver Portal (described below) where they can review it at their leisure, either online on any device or by printing a copy.

9. Uber periodically revises its agreements, and drivers who have previously entered into an agreement with Uber or its subsidiaries may be required to assent to revised versions of the contract in order to receive continued access to the app. When a revised agreement is rolled out, the process described above is repeated.

10. I have access to Uber's databases reflecting the dates and times that drivers accept their applicable agreements. These databases are maintained in the regular course of Uber's business and updated automatically as drivers agree to these documents. When a driver agrees to one of those documents through the app, an electronic receipt is generated at the time the driver agrees to the documents. The receipts include a date and timestamp indicating acceptance.

11. Based on my review of Uber's business records, Plaintiff Victor Mallh completed the sign-up process to use the UberBLACK platform to generate leads for potential riders on or about April 20, 2015. At that time, the agreement Plaintiff needed to electronically accept in

3

order to use the app was the April 3, 2015 Transportation Company Agreement (the "April 2015 Agreement"). Plaintiff accepted the April 2015 Agreement on June 9, 2015 through the process described above, and his account was activated. He completed his first trip using the app on June 10, 2015. A true and correct copy of the April 2015 Agreement Plaintiff Mallh accepted through the app is attached hereto as **Exhibit C**.

12. On December 14, 2015, Plaintiff was presented with and accepted a revised agreement through the app, the December 11, 2015 Technology Services Agreement (the "December 2015 Agreement"). As with the April 2015 Agreement, Plaintiff needed to accept the December 2015 Agreement electronically through the process described above in order to continue to generate leads for potential riders using the UberBLACK platform. For the December 2015 Agreement, the hyperlink discussed above was entitled "UBER USA Technology Services Agreement December 10 2015." A true and correct copy of the December 2015 Agreement Plaintiff Mallh accepted through the app is attached hereto as **Exhibit D**. Based on my review of Uber's business records, Plaintiff Mallh remains "active" on the Uber system.

13. Drivers using the UberBLACK platform can hire other individuals to drive vehicles and transport riders on their behalf under their Uber account. Accordingly, all drivers must also accept a "Driver Addendum," which incorporates by reference the operative arbitration provision. Plaintiff Mallh accepted the December 2015 Driver Addendum on December 14, 2015. A true and correct copy of the December 2015 Driver Addendum is attached hereto as **Exhibit E**.

14. After accepting his/her agreement, drivers have the opportunity to opt out of the Arbitration Provision if they desire. As an Operations Specialist, I have access to Uber's

business records reflecting the names of those individuals who have elected to opt out of a particular arbitration provision. The opt out records are maintained in the regular course of Uber's business and updated as drivers elect to opt out. Based on my review of these records, Plaintiff Mallh did not opt out of the Arbitration Provision in the April 2015 Agreement. He also did not opt out of the Arbitration Provision in the December 2015 Agreement. Uber's business records reflect that thousands of drivers did, in fact, opt out of one or more of the arbitration provisions contained in the various agreements in place between Uber and its subsidiaries, and the drivers who use the app.

15. All drivers who sign up to use the app are given access to an online "Driver Portal." The Driver Portal stores information (particular to each driver) regarding the services provided by that driver through Uber's various platforms. The Driver Portal also includes access to the contracts entered into by any given driver via a conspicuous download button. For example, drivers who use the UberBLACK platform to generate leads for potential riders are able to access their portal and review the operative Agreement. The Driver Portal is accessible online to drivers at all times. They may access the information by logging into their Uber account by using the internet on a computer, tablet, smartphone, or similar device. A true and correct copy of Plaintiff Mallh's Driver Portal showing links to the contracts that he entered into is attached hereto as **Exhibit F**.

16. A true and correct copy of the electronic receipts that Uber received following Plaintiff Mallh's acceptance of the April 2015 Agreement, December 2015 Agreement, and December 2015 Driver Addendum is attached hereto as **Exhibit G**.

17. Given the standards imposed by the TLC to obtain a for-hire vehicle license, neither Uber nor its agents procures consumer reports for drivers using the app in New York.

I declare under penalty of perjury pursuant to the laws of the United States of America that the foregoing is true and correct.

Executed at San Francisco, California, this 11th day of April 2016.

_____
MICHAEL COLMAN

Firmwide:139759466.2 073208.1093