UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MANZOOR MUMIN and VICTOR MALLH,
on behalf of themselves and all others similarly
situated,

                       Plaintiffs,

              - against -

UBER TECHNOLOGIES, INC. and RAISER,
LLC,

                   Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Case No.1:15 Civ. 06143 (NGG)(VMS)

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO COMPEL INDIVIDUAL ARBITRATION, DISMISS PLAINTIFF VICTOR
MALLH'S CLAIMS, AND STRIKE PLAINTIFF VICTOR MALLH'S
<u>CLASS ALLEGATIONS</u>**

Brittany Weiner
Jeanne Lahiff
IMBESI LAW P.C.
450 Seventh Avenue, Suite 1408
New York, New York 10123
Brittany@lawicm.com
Jlahiff@lawicm.com
Tel: (212) 736-0007

Hunter J. Shkolnik
Annie E. Causey
Salvatore C. Badala
NAPOLI SHKOLNIK PLLC
1301 Avenue of the Americas, Floor 10
New York, New York 10019
hunter@napolilaw.com
acausey@napolilaw.com
sbadala@napolilaw.com
Tel: (212) 397-1000
Fax: (646) 843-7603

*Attorneys for Plaintiffs and the Putative Class*

Served: April 25, 2016

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................... iii

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ......................................................................................... 2

    I.    Uber Misleads and Takes Advantage of its Drivers to Increase its Bottom Line.............. 2

    II.    Uber Impels its Drivers to Sign Agreements With Arbitration Provisions That Are

    Permeated With Unfair Terms. ............................................................................... 3

ARGUMENT .............................................................................................................. 6

    I.    California Law Applies to Determine Whether the Arbitration Provisions Are

    Enforceable Because the Agreements Contain California Choice-of-Law Clauses. .................. 6

    II.    The Court Should Evaluate the Arbitration Provisions Because the Delegation Clauses

    Are Unenforceable Under California Law. .............................................................. 8

        A.    The delegation clauses are unenforceable because they are not clear and unmistakable.

            ......................................................................................................................8

        B.    The delegation clauses are unenforceable because they are unconscionable. .............. 11

        1. The delegation clauses are substantively unconscionable................................12

        2. The delegation clauses are procedurally unconscionable................................13

    III.    The Arbitration Provisions Are Unenforceable Because They Violate California Public

    Policy. ...................................................................................................................... 16

        A.    The arbitration provisions violate California public policy because they contain non-

        severable waivers that prevent Uber's drivers from bringing PAGA claims. ...................... 16

        B.    The FAA does not preempt California's public policy regarding PAGA waivers. ....... 19

C.   The fact that Mallh cannot assert a PAGA claim is irrelevant. .................................... 19

IV.   The Arbitration Provisions Are Unenforceable Because They Are Unconscionable Under

California Law. ....................................................................................................................... 20

CONCLUSION .......................................................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*2002 Lawrence R. Buchalter Alaska Trust v. Phila. Fin. Life Assur. Co.*, 96 F.Supp.3d 182
(S.D.N.Y. 2015) .................................................................................................. 7

*Agric. Ins. Co. v. Ace Hardware Corp.*, 98 Civ. 8708, 2003 U.S. Dist. LEXIS 711, 2003 WL
164272 (S.D.N.Y. Jan. 17, 2003) ....................................................................... 7

*Ajamian v. CantorCO2e, L.P.*, 203 Cal.App.4th 771 (2012) .......................................... 8

*Armendariz v. Found. Health Pyschcare Servs., Inc.*, 24 Cal.4th 83 (Cal. 2000) ...................... 11

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ........................................... 11

*Baker v. Osborne Dev. Corp.*, 159 Cal. App. 4th 884 (Cal. App. Ct. 2008) ............................... 11

*Boss v. Am. Exp. Fin. Advisors, Inc.*, 15 A.D.3d 306, 791 N.Y.S.2d 12 (App. Div. 2005)............ 7

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) ................................. 10

*Estee Lauder Cos. v. Batra*, 430 F.Supp.2d 158 (S.D.N.Y. 2006) ................................. 7

*Freedman v. Chem. Constr. Corp.*, 43 N.Y.2d 260, 372 N.E.2d 12 401 N.Y.S.2d 176 (2d Cir.
1977) ............................................................................................................ 7

*Gentry v. Superior Court*, 42 Cal.4th 443 (Cal. 2007) ................................................. 13

*Granite Ridge Energy, LLC v. Allianz Global Risk U.S. Ins. Co.*, 979 F. Supp. 2d 385 (S.D.N.Y.
2013) ............................................................................................................ 7

*Iskanian v. CLS Transp. L.A., LLC*, 59 Cal.4th 348 (Cal. 2014) ........................................... 16, 17

*Mohamed v. Uber Techs., Inc.*, 109 F.Supp.3d 1185 (N.D. Cal. 2015)................................ passim

*Mohamed v. Uber Techs., Inc.*, No. C-14-5200 EMC, --- F. Supp. 3d ----, 2015 WL 3749716
(N.D. Cal. June 9, 2015) ................................................................................. 1

*Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006).................................... 12

*O'Connor v. Uber Techs., Inc.*, No. 13-cv-03826-EMC, 2015 WL 8292006 (N.D. Cal. Dec. 9, 2015) ............................................................................................................. 16, 18

*Parada v. Superior Court*, 176 Cal. App. 4th 1554 (Cal. App. Ct. 2009) .................................. 11

*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010) ......................................................... 10

*Sanchez v. Valencia Holding Co., LLC*, 61 Cal.4th 899 (Cal. 2015) ........................................... 14

*Zerman v. Ball*, 735 F.2d 15 (2d Cir. 1984) ................................................................................ 7

**Statutes**

California Civil Code § 1668 ........................................................................................................ 16

California Civil Code § 3513 .................................................................................................. 16, 17

Victor Mallh ("Mallh") respectfully submits this opposition to Uber Technologies, Inc. and Raiser, LLC's (collectively, "Uber") motion to compel individual arbitration, dismiss Mallh's claims, and strike Mallh's class allegations.

## PRELIMINARY STATEMENT

This case is about one thing: thousands of hard-working drivers struggling to get by while Uber, a company valued at more than $50 billion, exploits them to bolster its bottom line. Uber likes to call itself a technology company. But Uber sells rides, not software. Uber's drivers are the lifeblood of the company. Nonetheless, to increase profits, Uber uses its position of power to mislead and take advantage of them at every turn. Uber misclassifies its drivers as independent contractors to skirt its obligations under the Labor Code, misrepresents that tips are included in its drivers' fares so that it can keep a larger percentage of the revenue they generate, and misappropriates money from its drivers to line its own pockets. Uber now seeks to take further advantage of its drivers by preventing them from having their day in court.

According to Uber, the Court should dismiss Mallh's claims because he assented to agreements that contain arbitration provisions.[1] Although Uber disagrees, U.S. District Court Judge Edward M. Chen's well-reasoned decision in *Mohamed v. Uber Techs., Inc.*, No. C-14-5200 EMC, --- F. Supp. 3d ----, 2015 WL 3749716 (N.D. Cal. June 9, 2015), denying Uber's motion to compel arbitration based on the same arguments it makes here, is on directly on point with this case.

The Court should follow Judge Chen's lead and deny Uber's motion to dismiss for the following reasons.

---

[1] Mallh opted out of the December 11, 2015 Agreement on April 20, 2016.

*First*, California law applies to determine the enforceability of the arbitration provisions because the relevant agreements contain California choice-of-law clauses. Accordingly, Judge Chen's decisions are directly applicable to this case.

*Second*, the arbitration provisions' delegation clauses—which authorize the arbitrator to decide the enforceability of the arbitration provisions—are invalid for two separate reasons: (1) they conflict with other terms in the agreements that grant authority to the courts and are thus not clear and unmistakable; and (2) they are unconscionable. Consequently, the Court must determine whether the arbitration provisions are enforceable.

*Third*, the arbitration provisions contain blanket waivers of claims under California's Labor Code Private Attorneys General Act of 2004 ("PAGA") and are therefore unenforceable on public policy grounds. Because the PAGA waivers are non-severable, the arbitration provisions fail in their *entirety*—none of the remaining clauses, including the class-action waivers, is enforceable.

*Fourth*, the arbitration provisions are unenforceable because they are unconscionable. The provisions are laced with substantively unconscionable terms, including the non-severable PAGA waivers. They are procedurally unconscionable because Uber's drivers are economically pressured into not opting out of arbitration and Uber failed to disclose the disadvantages of arbitration.

## STATEMENT OF FACTS

**I.    Uber Misleads and Takes Advantage of its Drivers to Increase its Bottom Line.**

Mallh worked as an Uber driver since June 2015. (Third Amended Complaint ¶13.) For most of that time, Mallh made approximately $7.14 per hour ($1.86 less than minimum wage) and had to work the equivalent of two fulltime jobs just to make ends meet. (*Id.* ¶ 15.) Uber's

business model hinges on its ability to take advantage of its drivers and benefit itself at their expense:

- Uber misclassifies its drivers as independent contractors so they are not subject to the protections of the Labor Code, and Uber does not have to bear the costs of compliance. (*Id.* ¶¶ 3, 4, 41-48.) For example, by misclassifying its drivers, Uber is not required to pay them at least minimum wage. (*Id.*) Uber also avoids payment of employment-related expenses, taxes, and fees. (*Id.*)

- Uber misrepresents how its drivers are paid so that it can keep a larger percentage of the fares they generate. (*Id.* ¶¶ 5, 37-40.) For example, Uber tells customers that gratuity is included in the fares. (*Id.*) In reality, however, Uber fails to remit the gratuity to its drivers. (*Id.*) Instead, Uber pockets its drivers' money. (*Id.*)

- Uber misappropriates money from its drivers' fares. For example, Uber deducts a $1 "safe-ride" fee from each fare, which Uber uses to cover expenses that it should pay. (*Id.* ¶ 33.)

Mallh brought this action to put an end to Uber's unfair business practices. *(Id.* ¶ 6.)

## II.    Uber Impels its Drivers to Sign Agreements With Arbitration Provisions That Are Permeated With Unfair Terms.

Mallh entered into agreements with Uber that contain arbitration provisions. As detailed in Uber's motion, the two relevant agreements are the April 3, 2015 agreement (the "April Agreement") and December 11, 2015 agreement (the "December Agreement," and together with the April Agreement, the "Agreements"), attached as Exhibits C and D to the Declaration of Michael Colman. The Agreements contain similar terms.

*First*, the Agreements contain California choice-of-law clauses: "The interpretation of this Agreement shall be governed by California law, without regard to the choice or conflicts of law provisions of any jurisdiction . . . ." (April Agreement §15.1; December Agreement § 15.1.)

*Second*, the Agreements contain forum-selection clauses granting exclusive jurisdiction to the San Francisco courts: "[A]ny disputes, actions, claims or causes of action arising out of or in connection with this Agreement or the Uber Services . . . shall be subject to the exclusive jurisdiction of the state and federal courts located in the City and County of San Francisco, California." (April Agreement §15.1; December Agreement § 15.1.)

*Third*, if any provision is deemed unenforceable, the Agreements provide that it shall be stricken and the remaining provisions enforced. (*See* April Agreement §14.3; December Agreement § 14.3.)

*Fourth*, the Agreements grant Uber the unilateral "right to modify or supplement the terms and conditions of this Agreement at any time" and its drivers "are bound by the then-current version of this Agreement." (April Agreement § 14.1; December Agreement § 14.1.)

*Fifth*, the Agreements contain front-page notices regarding the right of Uber's drivers to opt out of arbitration, as well as notices imbedded in the arbitration provisions. (*See* April Agreement § 15.3(viii); December Agreement § 15.3(viii). But the fact that the Agreements are structured so that arbitration is the default dispute-resolution procedure underscores Uber's pro-arbitration stance and makes it unlikely that most of Uber's drivers feel free to exercise their right to opt out.

*Sixth*, the arbitration provisions provide that, "[u]nless the law requires otherwise," Uber's drivers are "required to split the cost of any arbitration with the Company." (April Agreement § 15.3; December Agreement § 15.3.) Specifically, "[i]f under applicable law the

4

Company is not required to pay all of the Arbitrator's and/or arbitration fees, such fee(s) will be apportioned equally between the Parties or as otherwise required by applicable law." (April Agreement § 15.3 (vi); December Agreement § 15.3(vi).) Importantly, Mallh would have to pay the filing fee, the retainer, and his *pro rata* portion of the fees just to initiate arbitration and determine whether his claims are arbitrable. This requirement is particularly onerous for Mallh because he made less than minimum wage at the time he signed the Agreements and continues to make less than minimum wage working for Uber.

*Seventh*, the arbitration provisions contain class-action waivers and require Uber's drivers to bring claims on an individual, non-representative basis. (*See* April Agreement § 15.3; November Agreement § 15.3.)

*Eighth*, the arbitration provisions are governed by the FAA and apply broadly "to require arbitration of every claim or dispute that lawfully can be arbitrated, except for those claims and disputes which by the terms of this Agreement are expressly excluded." (April Agreement § 15.3(i); December Agreement § 15.3(i).) Notably excluded from arbitration are "[d]isputes regarding . . . [the] intellectual property rights" of Uber and its drivers. (April Agreement § 15.3(ii); December Agreement § 15.3(ii) .) While this provision applies to Uber and its drivers, as Uber well knows, most drivers have no IP worth protecting and this provision's evenhandedness is illusory.

*Ninth*, in direct conflict with the Agreements' forum-selection clauses requiring that "any" dispute "shall" be subject to the "exclusive jurisdiction" of the San Francisco "courts," the arbitration provisions' delegation clauses provide that "without limitation disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the

Arbitration Provision . . . . shall be decided by an Arbitrator and not by a court or judge." (April Agreement § 15 (i); December Agreement § 15 (i).)

*Tenth*, the arbitration provisions require confidentiality: "[N]either a party nor an Arbitrator may disclose the existence, content, or results of any arbitration hereunder." (April Agreement § 15.3(vii); December Agreement § 15.3(vii).)

*Eleventh*, The arbitration provisions contain non-severable waivers that prevent Uber's drivers from bringing PAGA claims in any forum:

> Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an *individual basis only* and *not* by way of court or jury trial, or by way of class, collective, or *representative action* . . . . This Agreement is intended to require arbitration of every claim or dispute that lawfully can be arbitrated, except for those claims and disputes which by the terms of this Agreement are expressly excluded from the Arbitration Provision.

(April Agreement § 15.3(i); December Agreement § 15.3(i) (emphasis added; bold emphasis removed).)

> You and the Company agree to resolve any dispute in arbitration on an *individual basis only*, and *not* on a class, collective, or *private attorney general representative action basis*. The Arbitrator shall have no authority to consider or resolve any claim or issue any relief on any basis other than an individual basis. If at any point this provision is determined to be unenforceable, the parties agree that *this provision shall not be severable*, unless it is determined that the Arbitration may still proceed on an individual basis only.

(June Agreement at 14; November Agreement § 15.3(v) (same) (emphasis added; bold emphasis removed).)

## ARGUMENT

**I. California Law Applies to Determine Whether the Arbitration Provisions Are Enforceable Because the Agreements Contain California Choice-of-Law Clauses.**

California law applies to determine the enforceability of the arbitration provisions and their delegation clauses—including whether they are unconscionable—because the Agreements contain California choice-of-law clauses. (*See* April Agreement § 15.1; December Agreement § 15.1.)

"New York law provides that, 'as a general matter, the parties' manifested intentions to have an agreement governed by the law of a particular jurisdiction are honored. It is as though the law of the selected jurisdiction were incorporated into the agreement by reference.'" *2002 Lawrence R. Buchalter Alaska Trust v. Phila. Fin. Life Assur. Co.*, 96 F.Supp.3d 182, 207 (S.D.N.Y. 2015) (quoting *Granite Ridge Energy, LLC v. Allianz Global Risk U.S. Ins. Co.*, 979 F. Supp. 2d 385, 391 (S.D.N.Y. 2013 and *Freedman v. Chem. Constr. Corp.*, 43 N.Y.2d 260, 372 N.E.2d 12, 15, 401 N.Y.S.2d 176 (2d Cir. 1977)); *see also Boss v. Am. Exp. Fin. Advisors, Inc.*, 15 A.D.3d 306, 791 N.Y.S.2d 12, 14 (App. Div. 2005) ("It is the well-settled policy of courts of this State to enforce contractual provisions for choice of law . . . ." (internal quotation marks omitted)), *aff'd*, 6 N.Y.3d 242, 844 N.E.2d 1142, 811 N.Y.S.2d 620 (2d Cir. 2006). "Generally, 'under New York law . . . a contract's designation of the law that is to govern disputes arising from the contract . . . is determinative if the state has sufficient contacts with the transaction.'" *Estee Lauder Cos. v. Batra*, 430 F.Supp.2d 158, 170 (S.D.N.Y. 2006) (quoting *Zerman v. Ball*, 735 F.2d 15, 20 (2d Cir. 1984)). "'The New York Court of Appeals has addressed the 'substantial relationship' approach and held that while the parties' choice of law is to be given heavy weight, the law of the state with the 'most significant contacts' is to be applied.'" *Estee Lauder Cos.*, 430 F. Supp.2d at 171 (quoting *Agric. Ins. Co. v. Ace Hardware Corp.*, 98 Civ. 8708, 2003 U.S. Dist. LEXIS 711, 2003 WL 164272, at *5 (S.D.N.Y. Jan. 17, 2003)).  Here, the Agreements contain California choice-of-law clauses and California has the most significant

contacts because Uber Technologies, Inc.'s principal place of business and headquarters are in San Francisco, California.

## II.    The Court Should Evaluate the Arbitration Provisions Because the Delegation Clauses Are Unenforceable Under California Law.

The delegation clauses contained in the arbitration provisions are unenforceable because they are not clear and unmistakable. Moreover, even if they were clear and unmistakable, the delegation clauses would still fail because they are unconscionable. Consequently, the Court must determine whether the arbitration provisions are enforceable under California law.

### A.    The delegation clauses are unenforceable because they are not clear and unmistakable.

The delegation clauses cannot be enforced because they conflict with other provisions in the Agreements and are therefore not clear and unmistakable. "Unless the parties *clearly and unmistakably* provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the *court*, not the arbitrator." *Mohamed v. Uber Techs., Inc.*, 109 F.Supp.3d 1185, 1198 (N.D. Cal. 2015) (emphasis added; internal quotation marks omitted). Additionally, the Court stated,

> [E]ven broad arbitration clauses that expressly delegate the enforceability decision to arbitrators may not meet the clear and unmistakable test, where other language in the agreement creates an uncertainty in that regard. This is so because as a general matter, where one contractual provision indicates that the enforceability of an arbitration provision is to be decided by the arbitrator, but another provision indicates that the court might also find provisions in the contract unenforceable, there is not clear and unmistakable delegation of authority to the arbitrator.

*Id.* at 1200 (quoting *Ajamian v. CantorCO2e, L.P.*, 203 Cal.App.4th 771, 792 (2012)) (emphasis in original; citation and text alterations omitted).

Here, the delegation clauses provide that "*without limitation* disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability,

revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision . . . *shall* be decided by an *Arbitrator and not by a court or judge*." (April Agreement § 15.3(i); December Agreement § 15.3(i) (emphasis added).) In contrast, the forum-selection clauses require that "any disputes, actions, claims or causes of action arising out of or in connection with this Agreement . . . *shall* be subject to the *exclusive jurisdiction of the state and federal courts*" in San Francisco. (April Agreement § 15.1; December Agreement § 15.1 (emphasis added).) Moreover, the Agreements contain severability provisions, which, given their close proximity to the forum-selection clauses, could be read as delegating severance power to the court. (*See* April Agreement § 14.3; December Agreement § 14.3.)

In *Mohamed*, the court found that the above-quoted language from the forum-selection clauses is "inconsistent and in considerable tension with the language of the delegation clauses." *Mohamed*, 109 F.Supp.3d at 1201. The court also noted that the delegation clauses are "in some tension" with the severability provisions because "it is reasonable to assume that the typical Uber driver might read . . . [the] severability language to provide further evidence that Uber intended any determination as to whether any provision of . . . [the] Agreement[s] [are] [severable] . . . to be made in court, and not arbitration." *Id.* at 1201-02 (internal quotation marks omitted). Thus, "the delegation clause[s] . . . [are] . . . not clear and unmistakable[] and cannot be enforced." Id. (quotation marks omitted).[2]

---

[2] While the court evaluated a June 21, 2014 Agreement in *Mohamed*, it subsequently held that a November 10, 2014 Agreement's *identical* delegation clause is also unenforceable. *See O'Connor*, 311 F.R.D. 547, n.7 ("The [c]ourt finds that it, and not the arbitrator, has th[e] authority [to evaluate the November Agreement's arbitration provision] because the delegation clause is not clear and unmistakable."). The June 2014 and November 2014 Agreements contain all of the similar terms contained in both the April and December Agreements as explained above in pages (3-6).

Uber will likely rely on *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) and *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), and assert that Judge Chen should have examined the delegation clauses in isolation and erred when he held that they are not clear and unmistakable because they conflict with other provisions in the Agreements.  However, Uber misreads these decisions and ignores case law that directly contradicts its position. *Buckeye Check Cashing* holds that "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." 546 U.S. at 449. *Rent-A-Center* simply applies *Buckeye Check Cashing* to delegation clauses: in order for a court to evaluate the enforceability of a delegation clause, a party must challenge the delegation clause specifically, not the validity of the agreement as a whole. 561 U.S. at 72. In other words, arbitration provisions and delegation clauses are severable only in the sense that a court cannot invalidate them based on a non-specific challenge to the validity of the overall agreement.

These cases do not prohibit the court from consulting other contractual provisions when evaluating whether a delegation clause is enforceable. And Uber's attempt to portray *Mohamed* as a one-off decision that ignores "unequivocal Supreme Court" precedent.  Indeed, Judge Chen's holdings in *Mohamed* and *O'Connor*—that the delegation clauses are not clear and unmistakable because they conflict with the Agreements' forum-selection and severability provisions—are supported by well-established California law. *See, e.g.*, *Mohamed*, 109 F. Supp. 3d at 1199-201 ("A number of California Court of Appeal decisions have analyzed situations similar to the one presented here; an otherwise unambiguous and clear delegation clause is at least somewhat contradicted by other provisions in the relevant contract . . . . This Court finds that the reasoning of the California Court of Appeal . . . is persuasive, and equally applicable to the facts presented here. Indeed, the inconsistencies between the various clauses in Uber's

10

contracts are arguably more serious than those discussed in . . . *Baker*, *Hartley*, or *Parada*.")

(citing *Baker v. Osborne Dev. Corp.*, 159 Cal. App. 4th 884 (Cal. App. Ct. 2008); *Hartley*, 196

Cal. App. 4th 1249; *Parada v. Superior Court*, 176 Cal. App. 4th 1554 (Cal. App. Ct. 2009)).

    B.  <u>The delegation clauses are unenforceable because they are unconscionable.</u>

       In the alternative, even if the delegation clauses were clear and unmistakable, they still

cannot be enforced because they are unconscionable. "[I]f a delegation clause is 'clear and

unmistakable,' the [c]ourt *must still decline* to enforce [it] *if the delegation clause itself is*

*unconscionable . . . .*"  *Mohamed*, 109 F.Supp.3d  at 1204 (emphasis added). "Under California

law, courts may refuse to enforce any contract found to have been unconscionable at the time it

was made, or may limit the application of any unconscionable clause. A finding of

unconscionability requires 'a procedural and a substantive element.'" *AT&T Mobility LLC v.*

*Concepcion*, 563 U.S. 333, 340 (2011) (quoting *Armendariz v. Found. Health Pyschcare Servs.,*

*Inc.*, 24 Cal.4th 83, 114 (Cal. 2000)).) Substantive and procedural unconscionability should be

"balanced on a sliding scale." *Mohamed*, 109 F.Supp.3d  at 1205 (internal quotation marks

omitted). In other words, "the more substantively oppressive the contract term, the less evidence

of procedural unconscionability is required . . . and vice versa." *Id.* (quotation marks omitted).

       Substantive unconscionability focuses "'on overly harsh or one-sided results'";

procedural unconscionability on "'oppression or surprise due to unequal bargaining power.'"

*Concepcion*, 563 U.S. at 340 (quoting *Armendariz*, 24 Cal.4th at 114). The oppression standard

of procedural unconscionability "is nearly always satisfied when the contract is one of adhesion.

An adhesion contract is a standardized contract, which, imposed and drafted by the party of

superior bargaining strength, relegates the subscribing party *only the opportunity to adhere to the*

*contract or reject it.*" *Mohamed*, 109 F.Supp.3d  at 1205 (emphasis in original; internal quotation

marks omitted). The surprise standard of procedural unconscionability focuses on "the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Id.* (quotation marks omitted). "[S]urprise need not be demonstrated if the court determines that the arbitration provision of an adhesive contract is oppressive." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1284 (9th Cir. 2006) (en banc).

"[A] conclusion that a contract contains no element of procedural unconscionability is tantamount to saying that, no matter how one-sided the contract terms, a court will not disturb the contract because of its confidence that *the contract was negotiated or chosen freely*, that the party subject to a seemingly one-sided term is presumed to have obtained some advantage from conceding the term or that, if one party negotiated poorly, it is not the court's place to rectify these kinds of errors or asymmetries." *Mohamed*, 109 F.Supp.3d at 1213 (emphasis added; internal quotation marks omitted).

### 1. The delegation clauses are substantively unconscionable.

If the delegation clauses are enforced, Mallh would be subject to hefty fees of a type he would not face in court because the arbitration fee provisions require costs to be shared unless otherwise required by law. (*See* April Agreement §§ 15.3, 15.3(vi); December Agreement §§ 15.3, 15.3(vi).) The delegation clauses are therefore substantively unconscionable.

"Under California law, any clause in an employment agreement that would impose 'substantial forum fees' on an employee in her attempt to vindicate her unwaivable statutory rights is contrary to public policy and therefore substantively unconscionable." *Mohamed*, 109

F.Supp.3d at 1225 (quoting *Armendariz*, 24 Cal.4th at110).[3] Here, as the court found with regard to plaintiff Mohamed, *id.* at 1211, Mallh would be subject to much higher fees in arbitration than he would face in litigation. Indeed, he would have to pay a filing fee, the retainer, and his *pro rata* portion of the fees to even initiate arbitration and determine the threshold issue of arbitrability. Mallh didn't make enough money at the time he signed the Agreements to pay the required fees and he still currently makes less than minimum wage working for Uber.

"Because the [delegation clauses] impermissibly subject [Mallh] to the risk of having to pay significant forum fees, and because [he] [is] required to advance [his] share of such fees simply to start the arbitration, the delegation clauses . . . are substantively unconscionable to a *significant degree*." *Mohamed*, 109 F.Supp.3d at 1211 (emphasis added).

### 2.  The delegation clauses are procedurally unconscionable.

The delegation clauses satisfy both the surprise and oppression standards for procedural unconscionability. The *Mohamed* court held that the surprise standard of procedural unconscionability is satisfied Uber's 'prolix form.'" *Id.* at 1211. While the Agreements' conspicuous opt-out provisions make the question of oppression a closer call, *see id.* at 1211-12, relying on the California Supreme Court's decision in *Gentry v. Superior Court*, 42 Cal.4th 443 (Cal. 2007), the *Mohamed* court also held that this standard of procedural unconscionability is satisfied.

In *Gentry*, despite plaintiff's ability to opt out of arbitration, "[t]he Supreme Court held that failure to bring . . . specific substantively unconscionable or otherwise unfavorable features

---

[3] In *Mohamed*, Uber argued that *Armendariz* "does not apply here because the drivers are not its employees." 2015 WL 3749716, at *15. The court disagreed: "[I]f putative employers could avoid the rule of *Armendariz* simply by *claiming that* a laborer is not their employee, the rule of *Armendariz* would be effectively nullified. It remains to be seen whether drivers . . . are, or are not, Uber's employees." *Id.* (emphasis in original).

of the arbitration clause to [the employee's] attention in connection with the opt-out clause rendered the entire arbitration provision at least somewhat *procedurally* unconscionable" because, "[b]y neglecting to mention the many disadvantages to [the employee,] [he] would receive a highly distorted picture of the arbitration." *Mohamed*, 109 F.Supp.3d at 1214 (emphasis in original; quotation marks and citation omitted). "Put simply, the Supreme Court determined that the opt-out right was not sufficiently meaningful to render the contract without *any* procedural unconscionability where the employee was not given sufficient information about one-sided terms that might make that employee more likely to opt[] out of arbitration." *Id.* (emphasis in original).

"The Supreme Court further reasoned that the opt-out right could not cure the agreement of *all* procedural unconscionability because it is not clear that someone in [the employee's] position would have felt free to opt out." *Id.* (emphasis in original; internal quotation marks omitted). For example, "the fact that the arbitration agreement was structured so that arbitration was the default dispute[-]resolution procedure from which the employee had to opt out underscored [the employer's] pro-arbitration stance." *Id.* (quotation marks omitted). "This was important, the Supreme Court explained, because given the inequality between employer and employee and the economic power that the former wields over the latter *it is likely that [the] employee[] felt at least some pressure not to opt out of the arbitration agreement*." *Id.* (emphasis added; quotation marks and text alteration omitted). Indeed, "jobseekers are more likely to face *particularly acute economic pressure* to sign an employment contract with a predispute because the delegation clauses—which are buried in the arbitration provisions—are "hidden in arbitration provision, for the . . . agreement stands between the employee and necessary employment." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal.4th 899, 919 (Cal. 2015) (emphasis added;

14

internal quotation marks omitted).[4] The Supreme Court "concluded that the lack of material information about the disadvantageous terms of the arbitration agreement, combined with the likelihood that employees felt at least some pressure not to opt out of the arbitration agreement, leads to the conclusion that the present agreement was, at the very least, not entirely free from procedural unconscionability." *Mohamed*, 109 F.Supp.3d at 1214-15 (internal quotation marks and text alteration omitted).

Here, "the first portion of the *Gentry* test is met because [the Agreements] utterly failed to notify drivers of a specific drawback presented by the delegation clause—namely, that drivers may be required to pay considerable forum fees to arbitrate arbitrability, whereas they would not be required to pay such fees if they opted-out of arbitration (and thus the delegation clause)." *Id.* at 1215. The second portion of the *Gentry* test also is satisfied because "Uber drivers are likely

---

[4] The California Supreme Court's decision in *Sanchez* does not overrule its earlier holding in *Gentry* that failure to disclose substantively unconscionable or otherwise unfavorable arbitration terms is relevant to procedural unconscionability. While the court in *Sanchez* found that defendant "'was under no obligation to highlight the arbitration clause of its contract, nor was it required to specifically call that clause to [plaintiff's] attention,'" the court was concerned with "the issue of whether there was an agreement to arbitrate [and] held the clause need not be conspicuous in order for it to be part of an agreement." *O'Connor*, 2015 WL 8587879, at *6 (quoting *Sanchez*, 61 Cal.4th at 914). The court was not addressing the "distinct issue of unconscionability." *Id.* Assuming it was, the holding in *Sanchez* would still not negate *Gentry* because "[a]n evaluation of unconscionability is highly dependent on context," *Sanchez*, 61 Cal.4th at 911, and the situations in *Sanchez* and *Gentry* were markedly different. *Sanchez* involved a car buyer; *Gentry* an employee. "A family in search of a job confronts a *very different* set of burdens than one seeking a new vehicle. *Consumers*, who face significantly less economic pressure, would seem to *require measurably less protection*." *Id.* at 919-20 (emphasis added; quotation marks omitted). As such, even if *Sanchez* applies to the procedural unconscionability analysis in the consumer-dispute context, it should not apply in the employment context. *See, e.g.*, *Carlson v. Home Team Pest Def., Inc.*, 239 Cal.App.4th 619, 633 (2015) (holding in an employment case citing both *Sanchez* and *Gentry* that "failure to disclose the terms of arbitration and the applicable rules" constitutes procedural unconscionability). In any event, "the *Sanchez* court concluded there was 'some degree of procedural unconscionability' because the contract was one of adhesion." *O'Connor*, 2015 WL 8587879, at *6 (quoting *Sanchez*, 61 Cal.4th at 915). Thus, even under *Sanchez*, the arbitration provisions are procedurally unconscionable because Mallh felt pressure not to opt out of arbitration.

subject to the same general economic pressures that concerned the [c]ourt in *Gentry*." *Id.* Thus,

"despite the conspicuous opt-out provisions in the [Agreements], the Court cannot conclude that

the . . . delegation clauses are without procedural unconscionability altogether; [Mallh's] ability

to opt-out of the delegation clause[s] was not sufficiently meaningful to eliminate *all*

oppression." *Id.* at 1216.

**III.    The Arbitration Provisions Are Unenforceable Because They Violate California
          Public Policy.**

California public policy prohibits the enforcement of the arbitration provisions because

they contain non-severable PAGA waivers. Neither the FAA nor Mallh's inability to bring a

PAGA claim affects the analysis.

A.    The arbitration provisions violate California public policy because they contain non-
      <u>severable waivers that prevent Uber's drivers from bringing PAGA claims.</u>

The arbitration provisions contain waivers that preclude Uber's drivers from bringing

representative PAGA claims in any forum and are thus unenforceable on California public policy

grounds. Because the PAGA waivers are non-severable, the arbitration provisions fail in their

entirety, and none of the remaining clauses (*e.g.*, the class-action waivers) is enforceable.

PAGA "authorizes an employee to bring an action for civil penalties on behalf of the state

against his or her employer for Labor Code violations committed against the employee and

fellow employees, with most of the proceeds of that litigation going to the state." *Iskanian v.

CLS Transp. L.A., LLC*, 59 Cal.4th 348, 360 (Cal. 2014). "[A]n arbitration agreement requiring

an employee as a condition of employment to give up the right to bring representative PAGA

actions in any forum is contrary to public policy." *Id. See also O'Connor v. Uber Techs., Inc.*,

No. 13-cv-03826-EMC, 2015 WL 8292006, at *7-8 (N.D. Cal. Dec. 9, 2015).

The public policies expressed in two state statutes—California Civil Code § 1668, 3513— prohibit the enforcement of PAGA waivers. *Iskanian*, 59 Cal.4th at 382-83. Under section 1668, agreements that exempt their parties from violation of the law are against public policy and may not be enforced. *Id.* at 382. Because an agreement waiving the right to bring PAGA actions exempts the employer from responsibility for its own violation of the law, it is against public policy under section 1668. *Id.* at 383. "Such an agreement also violates . . . section 3513's injunction that a law established for a public reason cannot be contravened by a private agreement." *Id.* (internal quotation marks omitted). "The PAGA was clearly established for a public reason, and agreements requiring the waiver of PAGA rights would harm the state's interests in enforcing the Labor Code and in receiving the proceeds of civil penalties used to deter violations." *Id.*

Here, the arbitration provisions contain two separate clauses that work together to prevent Uber's drivers from bringing representative PAGA claims in any forum:

1. Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. This Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration *on an individual basis only* and *not by* way of court or jury trial, or by way of class, collective, or *representative action* . . . . This Agreement is intended to require arbitration of every claim or dispute that lawfully can be arbitrated, except for those claims and disputes which by the terms of this Agreement are expressly excluded from the Arbitration Provision. (April Agreement § 15.3(i); December Agreement § 15.3(i) (same) (emphasis added; bold emphasis removed).)

2. You and the Company agree to resolve any dispute in arbitration *on an individual basis only*, and not on a class, collective, *or private attorney general representative action basis*. The Arbitrator shall have no authority to consider or resolve any claim or issue any relief on any basis other than an individual basis. If at any point this provision is determined to be unenforceable, the parties agree that *this provision shall not be severable*, unless it is determined that the Arbitration may still proceed on an individual

17

basis only. (April Agreement § 15.3(v); December Agreement § 15.3(v) (emphasis added; bold emphasis removed).)

The first clause "is indisputably a blanket PAGA waiver, stating that any claim (all disputes) must be arbitrated (unless otherwise provided) and that a representative action cannot be brought in court or anywhere else." *O'Connor*, 2015 WL 8292006, at *9 (quotation marks omitted). It cannot be severed from the arbitration provisions for three reasons.

*First*, severance would require reforming the arbitration provisions. *Id.* "The fundamental problem with the arbitration [provisions] at issue is that [the first clause] acts as a predicate to [the second], requiring 'arbitration of every claim or dispute that lawfully can be arbitrated, except for those claims and disputes which by the terms of this Agreement are expressly excluded from the Arbitration Provision.'" *Id.* "Thus, because a PAGA claim is not expressly excluded, [the first clause] requires that the PAGA claim must go to arbitration, at which point [the second clause's] non- severable prohibition on PAGA claims in arbitration applies to bar the PAGA claim." *Id.* Put differently, the first clause "prevents a PAGA claim from being brought anywhere but in arbitration, and [the second] operates to prevent the PAGA claim from being brought in arbitration." *Id.* Because the two clauses "are so inextricably linked, it is impossible to grammatically or linguistically sever the PAGA claims waiver without completely undermining arbitration itself." *Id.* at *10.

*Second*, severance would be inconsistent with the arbitration provisions' overall purpose. "[T]he central purpose of the arbitration [provisions] is to funnel all disputes, except those expressly excluded . . . into arbitration, which can then only be conducted on an individual basis . . . . This purpose is not collateral to or distinguishable from the blanket PAGA waiver, but directly dependent upon it, as the arbitration [provisions] [are] designed to prevent PAGA claims from ever being brought." *Id.* at *12 (emphasis in original). Accordingly, "the arbitration

18

[provisions] here [are] not divisible, with the illegal portion being easily separable from the legal portion. The blanket PAGA waiver is instead an integral part of Uber's goal of requiring individual arbitration of all claims, and therefore cannot be severed." *Id.*

B. The FAA does not preempt California's public policy regarding PAGA waivers.

As both the California Supreme Court and Ninth Circuit have held, the FAA does not preempt California's public policy rule against PAGA waivers. *See Iskanian*, 59 Cal.4th at 388-89 ("California's public policy prohibiting waiver of PAGA claims, whose sole purpose is to vindicate the Labor and Workforce Development Agency's interest in enforcing the Labor Code, does not interfere with the FAA's goal of promoting arbitration as a forum for private dispute resolution."); *Sakkab*, 803 F.3d 425 (9th Cir. 2015) at 439 ("[T]he *Iskanian* rule does not conflict with the FAA, because it leaves parties free to adopt the kinds of informal procedures normally available in arbitration.")[5]

C. The fact that Mallh cannot assert a PAGA claim is irrelevant.

The fact that Mallh is a New York resident and cannot bring a PAGA claim against Uber does not affect the analysis. In *Mohamed*, the court held that the arbitration provisions' PAGA waivers are substantively unconscionable because they violate California public policy. *Mohamed*, 109 F.Supp.3d at 1222. "Uber argue[d] that the [c]ourt should not consider the potential substantive unconscionability of the PAGA waiver[s] when analyzing the 2014 contracts because the only driver in th[e] lawsuit bound to the 2014 contracts, Mohamed, does

_____

[5] In *Mohamed*, the court granted a limited stay with regard to dispositive motions (but not discovery) pending Uber's appeal of whether the FAA preempts California's public policy against PAGA waivers because there *was* no Ninth Circuit ruling on point. *Mohamed v. Uber Techs., Inc.*, No. C-14-5200-EMC, --- F. Supp. 3d ----, 2015 WL 4483990, at *5 (N.D. Cal. July 22, 2015). As recognized by the court in *O'Connor*, "[t]he Ninth Circuit [in *Sakkab*] has since agreed that a PAGA waiver is void as a matter of public policy, and that this *Iskanian* rule is not preempted by the FAA." 2015 WL 8292006, at *8 (citing *Sakkab*, 803 F.3d at 431-40).

not (and cannot) [i.e., because he drove for Uber in Massachusetts] raise any PAGA claims." *Id.* at 1233.

The court shot down Uber's argument based on well-established California law. "California Supreme Court precedent . . . provides that when analyzing unconscionability, the court is to consider whether the clause or contract was 'unconscionable at the time it was made.'" *Id.* at 1234 (quoting *Armendariz*, 24 Cal.4th at 114) (emphasis in original). "[T]he purpose of analyzing unconscionability at the time an agreement is drafted is to deter drafters from including such unconscionable terms in their agreements in the first instance: 'An employer will not be deterred from routinely inserting such . . . illegal clause[s] into the arbitration agreement . . . if it knows that the worst penalty for such illegality is the severance of the clause after the employee has litigated the matter.'" *Id.* (quoting *Armendariz*, 24 Cal.4th at 124 n.13).

When Uber drafted the Agreements it "had no way of knowing whether a particular driver would or would not bring representative PAGA claims against it. The mere fact that the particular Uber driver suing here does not have any PAGA claims does not render the PAGA waiver any less [violative of California public policy and] substantively unconscionable at the time when Uber drafted the provision and inserted it into [the Agreements]." *Id.* at 1235; *see also id.* at 1234 (PAGA waiver "substantively unconscionable and void against public policy" as applied to Mohamed).

## IV. The Arbitration Provisions Are Unenforceable Because They Are Unconscionable Under California Law.

"Because the arbitration [provisions] are unenforceable as a matter of public policy, a[n] . . . . unconscionability analysis is no longer needed." *O'Connor*, 2015 WL 8292006, at *15. Regardless, the arbitration provisions also are substantively and procedurally unconscionable.

20

In *Mohamed*, the court found that the arbitration provisions contain five substantively

unconscionable terms:

| Term | Reason Term Is Substantively Unconscionable |
|---|---|
| Arbitration cost splitting. (April Agreement §§ 15.3, 15.3(vi); December Agreement §§ 15.3, 15.3(vi).) | The cost-splitting terms "force Uber's presumptive employees to pay substantial arbitration costs of a type they would not pay in court." *Mohamed*, 109 F.Supp. 3d 1185 at 1126. |
| Confidentiality. (April Agreement § 15.3(vii); December Agreement § 15.3(vii).) | The confidentiality terms allow Uber to gain strategic advantages from being a repeat player in arbitration. *Mohamed*, 109 F.Supp.3d 1185 at 1226-27. |
| IP carve-out. (April Agreement § 15.3(ii); December Agreement § 15.3(ii).) | The IP carve-outs are overly one-sided and favor Uber. *Mohamed*, 109 F.Supp.3d 1185 at 1127-28. |
| Unilateral modification. (April Agreement at § 14.1; December Agreement § 14.1.) | The modification provisions, which allow Uber (the drafting party) to unilaterally terminate or modify the Agreements, violate California law. *Mohamed*, 109 F.Supp.3d 1185 at 1229-30. |
| PAGA waiver. (April Agreement §§ 15.3(i), 15.3(v); December Agreement §§ 15.3(i), 15.3(v).) | The PAGA waivers violate California public policy. *Mohamed*, 109 F.Supp.3d 1185 at 1219. |

Despite the lack of surprise because of the arbitration provisions' visibility and drivers'

right to opt out, the *Mohamed* court also held that there was "procedural unconscionability

sufficient to permit the [c]ourt to at least consider the claimed substantive unconscionability of

the [arbitration provisions]" because Uber's drivers felt economic pressure not to opt out and

Uber failed to disclose the unconscionable terms considered above. *Mohamed*, 109 F.Supp.3d

1185, 1231-32 (citing *Gentry*, 42 Cal.4th at 472).[6] The court also was persuaded by the fact that

drivers were forced to view the arbitration provisions on their phones. *See id.* at 1199 n.12.

---

[6] Uber also appealed the *Mohamed* court's reliance on *Gentry*, asserting that it conflicts with several Ninth Circuit cases finding no procedural unconscionability where there is an opportunity to opt out of arbitration. *Mohamed*, 2015 WL 4483990, at *4. Though *Gentry* expressly rejected the reasoning of the Ninth Circuit decisions Uber relies on and the court found the possibility of reversal "to be somewhat remote given *Gentry*'s clear pronouncement of California law," the court nevertheless granted a partial stay pending Uber's appeal because "the proper application

As discussed above, severance of the substantively unconscionable PAGA waivers is not possible. "Thus, the Court need not attempt to balance substantive unconscionability versus procedural unconscionability in order to determine [that] the arbitration provisions should fail in their *entirety*." *Id.* at 1232 (emphasis added); *see also Armendariz*, 24 Cal.4th at 696-97 (severance is not proper where an arbitration provision contains more than one unconscionable term because "multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage").

**CONCLUSION**

The Court should follow Judge Chen's lead and deny Uber's motion to compel individual arbitration, dismiss Mallh's claims, and strike Mallh's class allegations because the Agreements' arbitration provisions are unenforceable.

\

\

\

\

\

\

\

\

\

---

of *Gentry* appears to remain an issue of first impression in the Ninth Circuit." *Id.* The Ninth Circuit has not yet ruled on this issue, and the holding in *Mohamed*, 109 F.Supp. 3d 1185, is still valid.

Dated:   New York, New York
         April 25, 2016

                                                     Respectfully submitted,

                                                     NAPOLI SHKOLNIK PLLC

                                                   By: _____/s/  Salvatore C. Badala_____
                                                       Salvatore C. Badala, Esq.

                                                   Hunter J. Shkolnik
                                                 Annie E. Causey
                                                 1301 Avenue of the Americas, Floor 10
                                                 New York, New York 10019
                                                 Hunter@napolilaw.com
                                                 Acausey@napolilaw.com
                                                 Sbadala@napolilaw.com
                                                 Tel: (212) 267-3700
                                                 Fax: (212) 587-0031

                                                 *Attorneys for Plaintiffs and the Putative Class*